Exhibit A-1

Exhibit A-1

Filed
D.C. Superior Court
05/04/2017 19:10PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| BEYOND PESTICIDES, 701 E Street, SE, Suite 200, Washington, DC 20003, on behalf of the general public, <br><br> Plaintiff, <br><br> v. <br><br> DR PEPPER SNAPPLE GROUP, INC., 5301 Legacy Drive, Plano, Texas 75024, and MOTT'S LLP, 900 King Street Rye Brook, NY 10573, <br><br> Defendants. | Case No. _____ <br><br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

A TRUE COPY
TEST:
Clerk, Superior Court of
the District of Columbia

By _Andre Jefferson_
_7/18/2017_ Deputy Clerk

CLASS ACTION COMPLAINT

- 1 -

On behalf of the general public, Plaintiff Beyond Pesticides (the "Plaintiff"), by and through its counsel, allege the following based upon its own personal knowledge and the investigation of its counsel.

## NATURE OF THE ACTION

1.     Plaintiff brings this suit for equitable relief under the DC CPPA, D.C. Code § 28- 3901 *et seq.*, against Dr Pepper Snapple Group Inc. ("Dr Pepper") and Mott's, LLP, a wholly owned subsidiary of Dr Pepper, (collectively, "Defendants") for misleading consumers about the nature of applesauce products sold under the "Mott's" brand name, including Mott's Natural Unsweetened Applesauce, Mott's Healthy Harvest Applesauce varieties, and other varieties of "Mott's" brand applesauce products labeled with the representation "All Natural Ingredients" and/or "Natural" (collectively, the "Products").[1]

2.     During the applicable limitations period, Defendants engaged in and Defendants continue to engage in, a widespread, uniform marketing campaign on the packaging, website, and advertisements of the Products to mislead consumers about the nature and quality of the Products. Specifically, Defendants have represented the Products as made of "All Natural Ingredients" or as "Natural" in two ways. First, defendants prominently place an "All Natural Ingredients" representation on certain flavors or varieties of Mott's applesauce. This representation is made prominently on the front of the package, adjacent to the label identifying the flavor or variety of the applesauce, as seen in the representative images below. Second, defendants have labeled a variety of applesauce

---

[1] Defendants may discontinue offering some Products and regularly introduce new products that are also falsely labeled as made of "All Natural Ingredients," "Natural," or other similarly misleading representations. Plaintiff reserves the right to add or remove products to the definition of this Complaint as they become known.

as "Natural" in order to differentiate it from other varieties, such as cinnamon-flavored or organic applesauce. The "Natural" label is understood by consumers to mean that this variety of applesauce does not contain anything that is not natural.







3.      Defendants' "All Natural Ingredients" and "Natural" statements deceive and mislead consumers into believing the Products contain nothing unnatural or synthetic.

4.      The Products, which are sold in numerous supermarket chains within the District and nationally, are not "Natural."  Instead, the Products contain a synthetic and unnatural chemical, specifically, acetamiprid.

5.      Acetamiprid is not "Natural."

6.      Acetamiprid is a synthetic neonicotinoid insecticidal neurotoxin that may be hazardous to human development and to animals such as the honeybee.

7.      Acetamiprid is "legal" in connection to food products, insofar as the law does not preclude the use of acetamiprid in treating and harvesting crops, and has made allowances for certain amounts of residues to remain on fruits and vegetables before they are delivered to the end user to be cleaned and consumed.  Defendants, however, did not and do not simply claim that the Products are "legal"; instead, Defendants claim the Products contain nothing but "All Natural Ingredients" and/or are "Natural."

8.      By deceiving consumers about the nature and quality of the Products, Defendants are able to sell a greater volume of applesauce, to charge higher prices for the Products, and to take away market share from competing products, thereby increasing sales and profits.

9.      Consumers lack the scientific knowledge necessary to determine whether the Products contain anything except "All Natural Ingredients," whether the Products are "Natural," or to know or to ascertain the true contents and quality of the Products. Reasonable consumers must rely and do rely on Defendants to report honestly which substances the Products contain, and whether the Products contain only "All Natural Ingredients" or whether the Products are "Natural."

10.     Across all Defendants' Products, Defendants conceal the presence of acetamiprid and fail to inform consumers of the presence of acetamiprid in the Products.

11.     Reasonable consumers do not expect products labeled "All Natural Ingredients" would contain a synthetic, unnatural chemical.

12.     No synthetic, unnatural, and potentially dangerous chemical is disclosed

anywhere on the Products' packaging. The presence of acetamiprid can be ascertained only through a chemical study far beyond a reasonable inquiry that a consumer could be expected to do in a supermarket aisle. Thus, when deciding which products to buy, consumers must rely on affirmative representations made by Defendants, such as "All Natural Ingredients" and "Natural."

13. Defendants were motivated to mislead consumers for no other reason than to command more favorable pricing and/or to take away market share from competing products, thereby increasing the Products' sales and profits.

14. Because the Products contain a synthetic and unnatural chemical, Defendants' claims on the Products' labeling and in the Products' marketing that the Products are made of "All Natural Ingredients" and/or are "Natural" are false and misleading.

15. Defendants' false and misleading representations and omissions violate the District of Columbia Consumer Protection Procedures Act ("DC CPPA"), D.C. Code §§ 28-3901, *et seq*.

16. Because Defendants' labeling and advertising of the Products tends to mislead and is materially deceptive about the true nature and quality of the Products, Plaintiff brings this deceptive advertising case on behalf of the general public, and seeks relief including an injunction to halt Defendants' false marketing and sale of the Products, and a court-ordered corrective advertising campaign to inform the public of the true nature of the Products.

## JURISDICTION AND VENUE

17. This Court has personal jurisdiction over the parties in this case. Plaintiff,

by filing this Complaint, consents to this Court having personal jurisdiction over them.

18.     Beyond Pesticides is a 501(c)(3) non-profit public-interest organization headquartered in the District of Columbia.

19.     This Court has personal jurisdiction over Defendants pursuant to D.C. Code § 13-423. Defendants have sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over them because, *inter alia*, Defendants are engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in the District of Columbia, or otherwise purposefully avail themselves of the laws of this District through their marketing and sale of the Products in this District.

20.     This Court has subject-matter jurisdiction over this action pursuant to D.C. Code §§ 28-3905(k)(1)(B), (k)(1)(C), (k)(1)(D), and (k)(2).

21.     Venue is proper in this District under 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and quality of the Products, occurred within this District. The Products are available for purchase at retail stores in the District of Columbia.

## PARTIES

22.     Plaintiff Beyond Pesticides is a 501(c)(3) nonprofit public interest organization headquartered in the District of Columbia that works with allies in protecting public health and the environment to lead the transition to a world free of toxic pesticides. The organization's primary goal is to effect change through local action, assisting individuals and community-based organizations to stimulate discussion on the hazards of toxic pesticides, while providing information regarding safe alternatives.

23.     Beyond Pesticides promotes safe air, water, land, and food, and works to protect public health and the environment by encouraging a transition away from the use of toxic pesticides, including systemic neonicotinoid pesticides like acetamiprid, the main chemical at issue in this lawsuit. With the resources of Beyond Pesticides made available to the public on a national scale, Beyond Pesticides contributes to a significant reduction in unnecessary pesticides use, thus improving public health and the environment.

24.     Beyond Pesticides has historically taken a two-pronged approach to the pesticide problem by identifying the risks of conventional pest management practices and promoting non-chemical and least toxic management alternatives. For example, Beyond Pesticides produces the quarterly newsletter *Pesticides and You*, which provides in-depth articles and a voice for pesticide safety and alternatives. In 2014, *Pesticides and You* published a front-page article titled "No Longer a Big Mystery," a report summarizing the science behind bee declines. The document provided scientific evidence demonstrating that pesticides, especially the neonicotinoid class of insecticides, have sub-lethal and chronic impacts on bee behavior, immune systems, and colony longevity. A second *Pesticides and You* article, published in 2014 and titled "Bees, Bird and Beneficials," also focused on the range of harmful impacts threatening pollinators and wildlife. Additionally, Beyond Pesticides' "Daily News Blog" provides the most current information on pesticide issues, and has featured articles on neonicotinoids like acetamiprid 167 times since 2013, with 69 articles written in 2015, 39 in 2016, and 10 so far in 2017. Beyond Pesticides also disseminates information regarding neonicotinoids and alternatives to their use through the creation of fact sheets made available to the public through its website.

25.     Beyond Pesticides has submitted comments to the EPA regarding

neonicotinoids dozens of times over the past 10 years, with the most recent comments focusing on dinotefuran, imidacloprid, clothianidin and thiamethoxam. They also are members of the EPA workgroup "Pesticide Program Dialogue Committee" that meets twice a year to develop and recommend ways to protect pollinators at the state and national level.

26.   In addition, Beyond Pesticides regularly engages its members to take action regarding neonicotinoids.  Not only does Beyond Pesticides have 1,427 members, its list serve reaches 49,307 people who have signed up to receive emails. In 2016, Beyond Pesticides sent an alert requesting members and people on the list serve take action against neonicotinoids by submitting comments to EPA about imidacloprid, to which 4,224 people responded; in 2017 they asked people to send a message to Administrator of the Environmental Protection Agency Scott Pruitt requesting that he publish the neonicotinoid assessments for public comment, to which 4,319 people responded. In consumer actions, in 2017 they asked people to contact Amazon CEO Jeff Bezos and ask him to remove neonicotinoids from Amazon's website, an action 5,312 people participated in. Similarly, 4,289 individuals responded to a Beyond Pesticides request to contact True Value and Ace hardware stores, calling on them to eliminate neonicotinoids.

27.   Beyond Pesticides also holds an annual national conference that draws an attendance of around 200 people.  It is in a different location each year, and in 2017 took place in Minneapolis, Minnesota.  One of the keynote speakers was Vera Krischik, Ph.D., a tenured faculty in the Entomology Department at the University of Minnesota whose lab does research on insect exposure to various neonicotinoids, most recently imidacloprid and clothianidin. She spoke about the research process that evaluated the effect of imidacloprid

soil treatment on bumblebees in lab and field studies, which determined that negative effects were present below the U.S. EPA's 2016 no observable effect level.

28.     Finally, Beyond Pesticides has worked for more than 30 years to develop and uphold the standard associated with organic production, including raising consumer awareness as to what organic is, and why it is preferable to conventionally grown foods. The rampant use of the term "Natural" over the past decade by companies like Dr. Pepper Snapple Inc. has undermined the organic system, prompting Beyond Pesticides and its allies to call on FDA to ban the word "Natural" on labeling, or to define via an official rulemaking what makes a product "Natural."

29.     On May 3, 2017, in order to evaluate their purported qualities as a product made of "All Natural Ingredients" or as a "Natural" product, Beyond Pesticides purchased Mott's Natural Applesauce from Capital Supreme Market located at 501 4th Street, SE in Washington, D.C., and Mott's Strawberry Kiwi Applesauce from a Safeway Store located at 415 14th Street, SE in Washington, D.C.

30.     At all times mentioned herein, Defendant Dr Pepper Snapple Group, Inc. was a corporation organized under the laws of Delaware, with its principal place of business at 5301 Legacy Drive, Plano, Texas, 75024. Dr Pepper is in the business of developing, manufacturing, distributing, and selling beverages and snack products under various brands, including the Mott's brand.

31.     At all times mentioned herein, Defendant Mott's, LLP operates as a subsidiary of Dr Pepper. Mott's, LLP is organized under the laws of Delaware, with its principal place of business at 900 King Street, Rye Brook, NY 10573. Mott's, LLP is a nationally and internationally prominent maker of fruit snacks, applesauce, juices, and fruit

rolls.

32.     Defendants manufacture and/or cause the manufacture of the Products, which Defendants market and distribute in retail stores in the District of Columbia and throughout the United States.

33.     Upon information and belief, Defendants have caused harm to the general public of the District of Columbia.

34.     Plaintiff Beyond Pesticides is acting for the benefit of the general public pursuant to D.C. Code § 28-3905(k)(1). Plaintiff is a non-profit organization pursuant to D.C. Code § 28-3901(a)(14).

## SUBSTANTIVE ALLEGATIONS

35.     Plaintiff brings this suit for injunctive and equitable relief under the DC CPPA, D.C. Code § 28-3901 *et seq.*, against Defendants based on misrepresentations and omissions committed by Defendants regarding the Products, which Defendants falsely and deceptively label and market as made of "All Natural Ingredients" and/or as "Natural," when in fact the Products contain acetamiprid, which is not natural.

36.     In recent years, consumers have begun to seek out "Natural" food items and beverages. As a result, sales have increased for foods and beverages that are entirely natural.

37.     Consumers value products that are "Natural" for myriad reasons, including the perceived health benefits of natural food and drinks and avoiding unnatural, difficult-to-pronounce chemicals that would not normally be expected to be present in foods and drinks.

38.     Defendants know that consumers seek out and wish to purchase natural and

pure foods that do not contain artificial chemicals, and that consumers will pay more for foods that they believe to be natural than they will pay for foods that they do not believe to be natural.

39.     A recent nationally representative Consumer Reports survey of 1,005 adults found that more than half of consumers usually seek out products with a "natural" food label.[2]

40.     To capture this market, Defendants market the Products as made of "All Natural Ingredients" and/or as "Natural."

**A.     Defendants Falsely Claim the Products Are Made of "All Natural Ingredients" and/or Are "Natural."**

41.     As discussed above, on the Product labels, Defendants prominently market the Products as made of "All Natural Ingredients" and/or as "Natural."

42.     Defendants' representations that the Products are made of "All Natural Ingredients" and/or are "Natural" are false and misleading because a reasonable consumer believes that Products made of "All Natural Ingredients" do not contain a synthetic and unnatural chemical; in fact, however, the Products contain acetamiprid.

43.     Quantitative testing revealed that the Products contain acetamiprid.

44.     Tests conducted by an independent laboratory using liquid chromatography mass spectrometry with a reporting limit of 0.01 parts per million (ppm) revealed the amount of acetamiprid in Mott's Natural Unsweetened Applesauce to be 0.06 ppm.

---

[2] *See* Consumer Reports National Research Center, "Natural Food Labels Survey" (2016), *available at* http://www.consumerreports.org/content/dam/cro/magazine-articles/2016/March/Consumer_Reports_Natural_Food_Labels_Survey_2015.pdf (last visited Mar. 16, 2017).

45.     Nowhere on the Products' packaging or on Defendants' website do Defendants mention the presence of acetamiprid in the Products.

**B.     Defendants' Labels Are Misleading and Omit Material Facts.**

46.     Upon information and belief, Defendants have profited enormously from their falsely marketed products and their carefully orchestrated labels and images.

47.     Representing that a product is made of "All Natural Ingredients" and/or is "Natural" is a statement of fact.

48.     Failing to disclose that a product represented as made of "All Natural Ingredients" and/or as "Natural" in fact contains acetamiprid is an omission of relevant fact.

49.     Consumers reasonably believe that a product represented as made of "All Natural Ingredients" and/or as "Natural" does not contain any synthetic or unnatural chemicals.

50.     Testing reveals the presence of acetamiprid in the Products. Only Defendants know the methods by which the Products are grown, harvested, and processed or what would account for the presence of acetamiprid in the Products. Defendants' concealment tolls applicable statutes of limitations.

51.     To this day, Defendants continue to conceal and suppress the true nature, identity, source, and method of production of the Products here at issue.

52.     In 2014, the Consumer Reports National Research Center conducted a nationally representative phone survey to assess consumer opinion regarding food

labeling.[3] Sixty-six percent of all respondents in the Consumer Reports survey said that a "natural" label on packaged and processed foods means that "no toxic pesticides were used."[4]

53.     Defendants know and intend that when consumers see product labels or advertisements promising a product is made of "All Natural Ingredients" or is "Natural," consumers will understand that to mean that, at the very least, the product does not contain any synthetic and unnatural or potentially harmful chemicals.

54.     Defendants know what representations are made on the labels of the Products. Defendants also know how the Products were grown, harvested, and processed, and that the Products are likely to contain acetamiprid when delivered to the end user.

55.     Defendants thus knew all the facts demonstrating that the Products were mislabeled and falsely advertised.

**C.      Acetamiprid Is Not Natural.**

56.     Acetamiprid is a synthetic neonicotinoid insecticidal neurotoxin that causes generalized, nonspecific toxicity in mammals.[5]

57.     Neonicotinoids like acetamiprid are "systemic" insecticides. Systemic insecticides are absorbed into the plant to be distributed throughout the plant, into the

---

[3]*See* Consumer Reports National Research Center, "Organic Food Labels Survey 2014 Nationally Representative Phone Survey" (Mar. 2014), *available at* http://greenerchoices. org/wp-content/uploads/2016/08/CR2014OrganicFoodLabelsSurvey.pdf (last visited Mar. 23, 2017).

[4] *See id.*

[5] Environmental Protection Agency, "Acetamiprid: Pesticide Fact Sheet" (Mar. 15, 2002), *available at* https://www3.epa.gov/pesticides/chem_search/reg_actions/ registration/fs_PC-099050_15-Mar-02.pdf (last visited Mar. 23, 2017).

fibers, pollen, and nectar. Systemic insecticides kill insects in two different ways: Insects die when they come into contact with the pesticide, as when they are sprayed with it, and also when they ingest the plant which has absorbed the pesticide.

58.    Neonicotinoids like acetamiprid are believed to play a role in "colony collapse disorder" and may pose a risk to honeybees and other pollinators necessary for functioning ecosystems and agriculture.[6] Although the EPA has found that acetamiprid, by itself, is not highly toxic to bees, its use may lead to a decline in queen bees in colonies, interfere with the ability of bees to navigate back to their hives, and contribute to the suppression of bees' immune system at "sub-lethal" levels, making them susceptible to disease.[7]

59.    A multi-generation reproduction study on rats of the safety of acetamiprid found evidence of adverse effects on the offspring, including decreases in body weights in both generations, reductions in litter size, and viability.[8]

60.    Preliminary research indicates that acetamiprid may also have adverse effects on human nervous system development.[9] Acetamiprid may adversely affect the

---

[6] Elizabeth Grossman, "Declining Bee Populations Pose a Threat to Global Agriculture" Yale Environment 360 (Apr. 30, 2013), http://e360.yale.edu/features/declining_bee_populations_pose_a_threat_to_global_agriculture (last visited Mar. 23, 2017).

[7] *Id*; *see also* Stephanie Strom, "The Bee Mogul" N.Y. Times, Feb. 16, 2017, at BU1 *available at* https://www.nytimes.com/2017/02/16/business/a-bee-mogul-confronts-the-crisis-in-his-field.html?_r=0 (last visited Mar. 23, 2017).

[8] *Id.*

[9] Danny Hakim, "European Agency Warns of Risk to Humans in Pesticides Tied to Bee Deaths" N.Y. Times, Dec. 18, 2013, at B2 *available at* http://www.nytimes.com/2013/12/18/business/international/europe-warns-of-human-risk-from-insecticides.html (last visited Mar. 23, 2017).

development of neurons and has the potential to affect some brain functions such as learning and memory.[10]

61.    Acetamiprid is not "Natural."

62.    Acetamiprid should not be present in applesauce made of "All Natural Ingredients" or "Natural" applesauce.

63.    Defendants' representations that the Products are made of "All Natural Ingredients" and/or are "Natural" are false, and labeling or advertising the Products as such is misleading and deceptive.

**D.    Defendants Knew the Representations Were False, and Intended for Consumers to Rely on the Misrepresentations and Omissions.**

64.    Defendants hold themselves out to the public as trusted experts in the production of applesauce and apple and fruit products.

65.    Defendants knew what representations they made on the labels of the Products. They also knew how the Products were harvested and processed, and that they contain acetamiprid, a synthetic and unnatural pesticide.

66.    Defendants thus knew, or should have known, the facts demonstrating that the Products were mislabeled and falsely advertised.

67.    Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing food.

68.    Although reliance is not an element of the DC CPPA, Defendants made the

---

[10] *See* EFSA PPR Panel (EFSA Panel on Plant Protection Products and their Residues), "Scientific Opinion on the developmental neurotoxicity potential of acetamiprid and imidacloprid"  EFSA Journal 2013;11(12):3471, 47 (Feb. 21, 2014) *available at* http://onlinelibrary.wiley.com/doi/10.2903/j.efsa.2013.3471/epdf (last visited Mar. 23, 2017).

false, misleading, and deceptive representations and omissions intending for consumers to rely upon these representations and omissions in purchasing the Products.

69.    In making the false, misleading, and deceptive representations and omissions at issue, Defendants knew and intended that consumers would purchase the Products when consumers would otherwise purchase a competing product.

70.    Consumers are willing to pay more for products that made entirely of "Natural" ingredients than those that do not claim to be "Natural," and they expect those "Natural" products to be free of any synthetic chemicals. Consumers will also buy a larger quantity of products that are "Natural" and contain nothing except "All Natural Ingredients" than they would buy of products that do not claim to be "Natural." Thus, labeling the Products as made of "All Natural Ingredients" and/or as "Natural" furthers Defendants' private interest of increasing sales of the Products and decreasing the sales of competing products that are truthfully marketed as all-natural and/or acetamiprid-free.

71.    Defendants know that consumers prefer "Natural" ingredients and foods that do not contain synthetic and unnatural or potentially dangerous chemicals.

72.    The Products are widely purchased by consumers in order to be served to their children, as children younger than five eat more applesauce than older children and adults.[11]

73.    Children face unique dangers from pesticide exposure. The National

---

[11] U.S.D.A. ERS, "Canned Fruit and Vegetable Consumption in the United States An Updated Report to Congress," 19 (Oct. 2010) *available at* https://www.ers.usda.gov/webdocs/publications/ap050/8050_ap050.pdf.

Academy of Sciences reports that children are more susceptible to the effects of pesticides than adults are and estimates that 50% of lifetime pesticide exposures occur during the first five years of life.[12] In fact, studies show children's developing organs create "early windows of great vulnerability" during which exposure to pesticides can cause great damage.[13]

74.     Generally, Children are more susceptible to the effects of pesticides than adults, as children take in more pesticides relative to body weight than adults and have developing organ systems that are more vulnerable and less able to detoxify toxic chemicals.[14] In fact, Children ages 6-11 nationwide have significantly higher levels of pesticide residues in their bodies than all other age categories.[15]

75.     Defendants know or should know that many consumers buy foods marketed as "Natural" and/or free of synthetic and unnatural chemicals in an attempt to limit the amount of pesticides they and their families ingest.

76.     Defendants know that some consumers would not purchase the foods at all unless they were "Natural" and/or free of synthetic and unnatural and potentially dangerous chemicals.

---

[12] National Research Council, National Academy of Sciences, "Pesticides in the Diets of Infants and Children," 184-185 (1993).

[13] Landrigan, P.J., L Claudio, SB Markowitz, et al., "Pesticides and inner-city children: exposures, risks, and prevention." Environmental Health Perspectives 107 (Suppl 3) 431-437 (1999).

[14] US EPA, Office of the Administrator, "Environmental Health Threats to Children," EPA 175-F-96-001,        September        1996        *available        at* https://nepis.epa.gov/Exe/ZyPDF.cgi/40000839.PDF?Dockey=40000839.PDF        (last visited Apr. 24, 2017).

[15] Centers for Disease Control and Prevention, "Second National Report on Human Exposure to Environmental Chemicals," (Jan. 2003).

77.   When consumers purchase the Products, the presence of acetamiprid is not disclosed.

78.   Defendants' conduct in labeling or representing the Products as made of "All Natural Ingredients" and/or as "Natural" deceived and/or was likely to deceive the public.

79.   Consumers were deceived into believing that the Products are made of "All Natural Ingredients" and/or are "Natural" and that there is nothing in the Products that is synthetic or unnatural.

80.   Consumers cannot discover the true nature of the Products from reading the labels. Consumers could not discover the true nature of the Products even by visiting Defendants' websites, which make no mention of acetamiprid.

81.   Upon information and belief, Defendants have failed to remedy the problem with the Products, thus causing future harm to consumers.

82.   Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold as is, labeled as made of "All Natural Ingredients" and/or as "Natural" while omitting any reference to the presence of acetamiprid.

83.   Defendants have failed to provide adequate relief to members of the consuming public as of the date of filing this Complaint.

84.   Plaintiff contends that the Products were sold pursuant to unfair and unconscionable trade practices, because the sale of the Products offends public policy and is immoral, unethical, oppressive, unscrupulous, and caused substantial economic injuries to consumers.

85.   Reasonable consumers do not expect Products represented and advertised

as made of "All Natural Ingredients" or as "Natural" to contain a synthetic chemical such as acetamiprid. Defendants' statements and other representations convey a series of express and implied claims and/or omissions that Defendants know are material to the reasonable consumer in making a purchasing decision, and that Defendants intended for consumers to rely upon when choosing to purchase the Products.

86.    Defendants misrepresented the nature and quality of the Products, and this conduct was and is false, misleading, and/or likely to deceive reasonable consumers. Reasonable consumers expect that if a product is labeled as made of "All Natural Ingredients" or as "Natural," the manufacturer is not omitting reference to the presence of a synthetic and unnatural chemical; otherwise, consumers are denied the opportunity to make informed purchasing decisions.

87.    Accordingly, Plaintiff seeks declaratory relief in the form of an order declaring Defendants' conduct to be unlawful, as well as injunctive relief putting an end to Defendants' misleading and unfair business practices, including a change to the Products' labels and marketing, or a reformulation of the Products so that the Products no longer contain acetamiprid, and equitable relief requiring the disgorgement of profits obtained by Defendants from each sale of the Products in the District of Columbia.

<u>**CAUSE OF ACTION**</u>
<u>**VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT**</u>

88.    Pursuant to D.C. Code §§ 28-3905(k)(1) and 28-3905(k)(2), Plaintiff brings this Count against Defendants on behalf of the general public of the District of Columbia, for Defendants' violation of DC CPPA, D.C. Code § 28-3901, *et seq.*

89.    Plaintiff incorporates by reference all the allegations of the preceding

paragraphs of this Complaint.

90.  Defendants have labeled and advertised the Products as made of "All Natural Ingredients" and/or as "Natural" and have otherwise presented an image and marketing materials suggesting that the Products are natural, when in fact the Products contain a synthetic and unnatural chemical.

91.  Defendants' labeling and advertising of the Products misrepresents, tends to mislead, and omits facts regarding the source, characteristics, standard, quality, and grade of the Products.

92.  Defendants' misleading labeling and advertising include statements that the Products are made of "All Natural Ingredients" and/or are "Natural."

93.  Defendants' labeling and marketing materials make representations and use innuendo that tends to mislead reasonable consumers into believing that the Products are natural, with 100% natural ingredients, and do not contain any synthetic and unnatural chemical.

94.  The representations omit the truth about the Products, namely, that the Products contain acetamiprid.

95.  The Products lack the characteristics, benefits, standards, qualities, or grades that Defendants state and imply in their labeling and advertisements.

96.  These misstatements, innuendo, and omissions are material and have the tendency to mislead.

97.  Defendants knowingly did not sell the Products as advertised.

98.  The facts as alleged above demonstrate that Defendants have violated the DC CPPA, D.C. Code § 28-3901 *et seq.* Specifically, Defendants have violated D.C. Code

§ 28-3904, which makes it an unlawful trade practice to:

 (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .

 (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

 (e) misrepresent as to a material fact which has a tendency to mislead;

 (f) fail to state a material fact if such failure tends to mislead;

  (f-1) [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; … [or]

 (h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

99. The DC CPPA makes such conduct an unlawful trade practice "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C. Code § 28-3904.

100. Though Plaintiff need not show proof of deception to succeed on its DC CPPA claim, consumers were in fact deceived. Defendants knew or should have known that reasonable consumers would believe that the Products are made of "All Natural Ingredients" or are "Natural" as labeled and advertised.

101. Plaintiff has a sufficient nexus to consumers of the Products to adequately represent those interests.

102. Because Defendants misrepresent the characteristics and benefits of the Products; misrepresent the standard, quality, and grade of the Products; misrepresent, fail to state, and use innuendo and ambiguity in ways which tend to mislead reasonable

consumers with regard to material facts about the Products; and advertise the Products without the intent to sell the Products as advertised, Defendants' labeling and marketing of the Products as made of "All Natural Ingredients," and as "Natural" violates D.C. Code §§ 28-3904(a), (d), (e), (f), (f-1), and (h).

103.   Defendants are "person[s]" within the meaning of D.C. Code § 28-3901(a)(1), "merchant[s]" under § 28-3901(a)(3), and provide "goods" within the meaning of § 28-3901(a)(7).

104.   Pursuant to D.C. Code § 28-3905(k)(1)I, "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

105.   Via §§ 28-3905(k)(1)I and (k)(1)(D)(i), the DC CPPA allows for non-profit organizational standing to the fullest extent recognized by the D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

106.   Plaintiff is a "person" within the meaning of D.C. Code § 28-3901(a)(1) and a "non-profit organization" within the meaning of D.C. Code § 28-3901(a)(14).

107.   Plaintiff brings this Count against Defendants for Defendants' violation of the DC CPPA, D.C. Code § 28-3901 *et seq*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants and request the following relief:

A.    a declaration that Defendants' conduct is in violation of the DC CPPA;

B.    an order enjoining Defendants' conduct found to be in violation of the DC CPPA, as well as corrective advertising;

C.    an order awarding equitable relief pursuant to D.C. Code § 28-3901(k)(2)(F), specifically:

      1.    directing Defendants to disgorge the profits obtained from each sale of the Products in the District of Columbia;

      2.    establishing a community fund for the benefit of the general public of the District of Columbia, which fund shall be used for educational and other charitable purposes relating to consumer awareness of acetamiprid; and

      3.    directing Defendants to pay into said community fund all monies which it has been required to disgorge;

D.    an order granting Plaintiff's costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law; and

E.    such further relief, including equitable relief, as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: May 4, 2017

Respectfully submitted,

**RICHMAN LAW GROUP**

By: Kim E. Richman
(D.C. Bar No. 1022978)
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
krichman@richmanlawgroup.com

*Attorneys for Plaintiff*



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

BEYOND PESTICIDES
Vs.                                              C.A. No.      2017 CA 003156 B
DR PEPPER SNAPPLE GROUP, INC. et al

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge JENNIFER A DI TORO
Date:  May 5, 2017
Initial Conference: 9:30 am, Friday, August 11, 2017
Location:   Courtroom 518
               500 Indiana Avenue N.W.
               WASHINGTON, DC  20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code§ 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin

Filed
D.C. Superior Court
05/29/2017 10:88BM
Clerk of the Court



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

BEYOND PESTICIDES, 701 E Street, SE, Suite 200, Washington, DC 20003,
on behalf of the general public,

_____
                                          Plaintiff

vs.

DR PEPPER SNAPPLE GROUP, INC., 5301 Legacy Drive, Plano, Texas
75024

_____
                                          Defendant

Case Number   CA 2017 CA 003156 B

**This document was delivered to you on the ʒℓe day of June 20 17**
**By: Whitnie French**

**SUMMONS**

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kim E. Richman
_____
Name of Plaintiff's Attorney

81 Prospect Street
_____
Address
Brooklyn, New York 11201

(212) 687-8291
_____
Telephone

*Clerk of the Court*

By _____
                                    Deputy Clerk

Date   **05/24/2017**

如需翻译, 请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

BEYOND PESTICIDES, 701 E Street, SE, Suite 200, Washington, DC 20003,
on behalf of the general public,

_____
                                    Demandante

                    contra

DR PEPPER SNAPPLE GROUP, INC., 5301 Legacy Drive. Plano,      Número de Caso:    CA 2017 CA 003156 B
Texas 75024,                                                _____

_____
                                    Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Kim E. Richman                                              *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

81 Prospect Street                                          Por: _____
_____
Dirección                                                              Subsecretario
Brooklyn, New York 11201

(212) 687-8291                                             Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
        번역을 원하시면, (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA.  SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CASUM.doc

Filed
D.C. Superior Court
05/24/2017 10:85PM
Clerk of the Court



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Telephone: (202) 879-1133**

BEYOND PESTICIDES, 701 E Street, SE, Suite 200, Washington, DC 20003,
on behalf of the general public,

_____
                                    Plaintiff

                          vs.                              Case Number    CA 2017 CA 003156 B

MOTT'S LLP, 900 King Street
Rye Brook, NY 10573,

_____
                                    Defendant

### SUMMONS

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Kim E. Richman                                        *Clerk of the Court*
_____
Name of Plaintiff's Attorney

81 Prospect Street                         By  _____
_____          Deputy Clerk
Address
Brooklyn, New York 11201

(212) 687-8291                             Date    **05/24/2017**
_____
Telephone
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

        IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

        If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, D.C. 20001 Teléfono: (202) 879-1133**

BEYOND PESTICIDES, 701 E Street, SE, Suite 200, Washington, DC 20003,
on behalf of the general public,

Demandante

contra

MOTT'S LLP, 900 King Street
Rye Brook, NY 10573,

Número de Caso:   CA 2017 CA 003156 B

Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Kim E. Richman

*SECRETARIO DEL TRIBUNAL*

Nombre del abogado del Demandante

81 Prospect Street

Por: _____

Dirección
Brooklyn, New York 11201

Subsecretario

(212) 687-8291

Fecha _____

Teléfono

如需翻译,请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시요       የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés<br>See reverse side for English original

CASUM.doc

Exhibit A-2

Exhibit A-2

C'lose %Open %Save §print

Add Record
Long Display
File Tracking

No Motions
In Custody

Parties
Service Maintenance
Image

Forms

1 Events
1 Service Summary

12 Ticklers

Print Docket

Portrait Print
Barcode Report

Labels
System Notification

Docket Image
Link
Docket
Calculate
Process
8 Reorder Dockets

9 View Document

10 Options

5 No Motions
6 In Custody

Search Criteria          Search          Clear

2017 CA 003156 B          BEYOND PESTICIDIES          Vs.          DR PEPPER SNAPPLE GROUP, INC. et al          JAD

Docket Entry                                    ✓          Begin Date                    ✓          SortDescending          ✓
Images          All Dockets                     ✓          End Date                      ✓
Participant                                     ✓
Display          Exclude Non Display Dockets
Option

| Search Results Docket Date | Reference Description | Amt Owed/ Dism/Credit | Amount Due |
|---|---|---|---|
| 7/12/2017 | Event Resulted: The following event: Initial Scheduling Conference-60 scheduled for 08/11/2017 at 9:30 am has been resuled as follows: Result: Event Cancelled Judge: DI TORO, JENNIFER A Location: Courtroom 518 Dismissed Without Prejudice Pursuant to SCR 4(m). Notice Mailed | | |
| 5/24/2017 | Summons Issued and eServed by the Clerk DR PEPPER SNAPPLE GROUP, INC. (Defendant); | | |
| 5/24/2017 | Summons Issued and eServed by the Clerk MOTTS LLP (Defendant); | | |
| 5/19/2017 | Initial Summons Requested as to: Dr. Pepper Snapple Group, Inc. Filed. Submitted 05/19/2017 17:38: ajm Attorney: RICHMAN, KIM E. (1022978) DR PEPPER SNAPPLE GROUP, INC. (Defendant); | | |
| 5/19/2017 | Initial Summons Requested as to: Mott's LLP Filed. Submitted 05/19/2017 17:35. ajm Attorney: RICHMAN, KIM E. (1022978) MOTTS LLP (Defendant); | | |
| 5/5/2017 | Complaint Package eServed | | |

1 Doc
1 Docket ID
Display
File Request
(Interface)

| Date | Event | Amount |
|---|---|---|
| 5/5/2017 | Initial Order and Addendum Issued (60 Days)<br>Initial Order-60 Days<br>Sent on: 05/05/2017 14:20:15.38 | |
| 5/5/2017 | Event Scheduled<br>Event: Initial Scheduling Conference-60<br>Date: 08/11/2017 Time: 9:30 am<br>Judge: DI TORO, JENNIFER A Location:<br>Courtroom 518 | |
| 5/4/2017 | eComplaint. Filed. Submitted. 05/04/2017 19:10.<br>ncv.<br>(NO INFORMATION SHEET AND NO SUMMONS SUBMITTED<br>AT FILING)<br>Attorney: RICHMAN, KIM E. (1022978)<br>BEYOND PESTICIDES (Plaintiff); | |
| 5/4/2017 | Complaint for Product Liability Filed Receipt:<br>367613 Date: 05/05/2017 | 120.00 |

D.C. Courts Home

# Court Cases Online

Case Search for: 2017 CA 003156

Click here to view search criteria

Search retrieved 1 case in less than a second.

Click here to minimize search results

Selected 1 cases to view

**Note:** The entire result set may be sorted by clicking on the labels for each column.

| Select | Case Number | Case Type | Disposition | Party Type | Status | File Date |
|--------|-------------|-----------|-------------|------------|--------|-----------|
| ☑ | 2017 CA 003156 B | Civil II | Dismissed-Pursuant To SCR 4(M) | Plaintiff | Closed | 05/04/2017 |

Clear ✓    Case Details 🖶

First ◄◄    Fast Rewind ◄◄    Previous ◄    Next ►    Fast Forward ►►    Last ►►I

Viewing single case; Details retrieved in less than a second.

Click here to view case summary

| 2017 CA 003156 B: BEYOND PESTICIDES Vs. DR PEPPER SNAPPLE GROUP, INC., et al. | |
|---|---|
| Case Type: Civil II | File Date: 05/04/2017 |
| Status: Closed | Status Date: 05/04/2017 |
| Disposition: Dismissed-Pursuant To SCR 4(M) | Disposition Date: 07/12/2017 |

| Party Name | Party Alias(es) | Party Type | Attorney(s) |
|------------|-----------------|------------|-------------|
| BEYOND PESTICIDES | | Plaintiff | RICHMAN, KIM E. |
| DR PEPPER SNAPPLE GROUP, INC. | | Defendant | |
| MOTTS LLP | | Defendant | |

| Docket Date | Description | Messages |
|-------------|-------------|----------|
| 07/12/2017 | Event Resulted: | Event Resulted:<br>The following event: Initial Scheduling Conference-60 scheduled for 08/11/2017 at 9:30 am has been resulted as follows:<br><br>Result: Event Cancelled<br>Judge: DI TORO, JENNIFER A Location: Courtroom 518 |
| 07/12/2017 | Dismissed Without Prejudice Pursuant to SCR 4(m). Notice Mailed | Dismissed Without Prejudice Pursuant to SCR 4(m). Notice Mailed |
| 05/05/2017 | Event Scheduled | Event Scheduled<br>Event: Initial Scheduling Conference-60<br>Date: 08/11/2017 Time: 9:30 am<br>Judge: DI TORO, JENNIFER A Location: Courtroom 518 |
| 05/04/2017 | Complaint for Product Liability Filed | Complaint for Product Liability Filed Receipt: 367613 Date: 05/05/2017 |

| Receipt # | Date | From | Payments | | Fee | | Amount Paid |
|-----------|------|------|----------|--|-----|--|-------------|
| 367613 | 05/05/2017 | RICHMAN, KIM E. | Efile | $120.00 | Cost | $120.00 | $120.00 |