## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BEYOND PESTICIDES, 701 E Street, SE, Suite 200, Washington, DC 20003, on behalf of the general public,<br><br>                Plaintiff,<br>        v.<br>DR PEPPER SNAPPLE GROUP, INC., 5301 Legacy Drive, Plano, Texas 75024 and MOTT'S LLP, 900 King Street, Rye Brook, NY 10573,<br><br>                Defendants. | Civil Action No. 1:17-cv-1431-RCL |

## PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page No.**

INTRODUCTION ................................................................................................ 1

FACTS ............................................................................................................... 3

ARGUMENT ...................................................................................................... 4

I.      This Court Has Subject Matter Jurisdiction to Hear Beyond Pesticides' CPPA Claim. .... 5

II.     Beyond Pesticides' Claim That a Reasonable Consumer Would Not Expect Synthetic
        Pesticides in a Food Labelled as "Natural" Is Plausible. .................................... 7

        A.      The Reasonable-Consumer Standard Is a Question of Fact and Cannot Be
                Decided on a Motion to Dismiss. .......................................................... 7

        B.      Federal Regulations Do Not Define What "Natural" Means to a Reasonable
                Consumer ............................................................................... 11

III.    Beyond Pesticides Has Established Standing to Pursue Its Claim by Alleging Injury in
        Fact. ................................................................................................ 13

        A.      The CPPA Gives a Non-Profit Organization Standing as a Tester and on Behalf of
                the General Public. ..................................................................... 13

        B.      Beyond Pesticides Has an Explicit Statutory Right to Seek an Injunction Under
                the CPPA. ............................................................................... 16

IV.     Beyond Pesticides' Claims Are Not Preempted. ............................................. 17

        A.      Beyond Pesticides' Claims Are Consistent With Federal Law, Which Prohibits
                Food Labels That Are "False or Misleading." ........................................ 18

        B.      Beyond Pesticides' Claims Do Not Conflict with Any Federal Requirements. ... 19

V.      Beyond Pesticides' Claims Are Not Expressly Preempted. ................................. 22

        A.      Congress Has Not Preempted the Entire Field of Food Regulation. .................. 23

VI.  There Is No FDA Guidance Forthcoming and No Reason to Defer to Any Agency Under
the Doctrine of Primary Jurisdiction. ................................................................. 25

    A.  Resolution of This Case Does Not Require the FDA's Expertise. ....................... 25

    B.  Uniformity of Results Does Not Compel Dismissal. ........................................... 27

    C.  The FDA Is Unlikely to Issue Guidance on the Term "Natural." ........................ 28

    D.  EPA Decisions Are Not Relevant to the Present Action. .................................... 30

CONCLUSION ....................................................................................................................... 31

# TABLE OF AUTHORITIES

Cases

*Access Telecomms. v. Southwestern Bell Tel. Co.*,
    137 F.3d 605 (8th Cir. 1998) ................................................... 31

*Alicke v. MCI Communications Corp.*,
    111 F.3d 909 (D.C. Cir. 1997) .................................................. 8

*American Nat'l Ins. Co. v. FDIC*,
    642 F.3d 1137, 395 U.S. App. D.C. 316 (D.C. Cir. 2011) ....................... 4

*APCC Servs., Inc. v. WorldCom, Inc.*,
    305 F. Supp. 2d 1 (D.D.C. 2001) ............................................. 25

*Astiana v. Hain Celestial Group, Inc.*,
    783 F.3d 753 (9th Cir. 2015) ............................................. 23, 31

*Ault v. J.M. Smucker Co.*,
    2014 U.S. Dist. LEXIS 67118 (S.D.N.Y. May 15, 2014).................... 9, 24

*Belfiore v. Procter & Gamble Co.*,
    94 F. Supp. 3d 440 (E.D.N.Y. 2015) ........................................ 17

*Beyond Pesticides v. Dr Pepper Snapple Grp., Inc., et al.*,
    322 F. Supp. 3d 119 (D.D.C. 2018) ........................................... 5

*Beyond Pesticides v. Monsanto Co.*,
    311 F. Supp. 3d 82 (D.D.C. 2018) .......................................... 15

*Bobreski v. U.S. E.P.A.*,
    284 F. Supp. 2d 67 (D.D.C. 2003) ............................................ 4

*Brazil v. Dole Packaged Foods, LLC*,
    660 Fed. App'x. 531 (9th Cir. 2016)......................................... 28

*Browning v. Clinton*,
    292 F.3d 235 (D.C. Cir. 2002) ............................................... 4

*District of Columbia v. ExxonMobil Oil Corp.*,
    172 A.3d 412 (D.C. Cir. 2017) ............................................. 11

*Empagran S.A. v. F. Hoffman-Laroche, Ltd.*,
    315 F.3d 338, 354 U.S. App. D.C. 257 (D.C. Cir. 2003) ....................... 4

*English v. General Elec. Co.*,
    496 U.S. 72, 79 (1990)..................................................... 19

*Gibson v. Quaker Oats Co.*,
No. 16-CV-4853, 2017 U.S. Dist. LEXIS 130696 (N.D. Ill. Aug. 14, 2017) .................. 22, 24

*Grayson v. AT&T Corp.*,
15 A.3d 219 (D.C. Cir. 2011) ......................................................................... 14, 17

*Ham v. Hain Celestial Group, Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) ................................................................... 9

*Heller v. Coca-Cola Co.*,
230 A.D.2d 768 (N.Y. App. Div. 1996) ............................................................... 27

*Henderson v. Gruma Corp.*,
No. CV 10-04173, 2011 U.S. Dist. LEXIS 41077 (C.D. Cal. Apr. 11, 2011)...................... 17

*Herron v. Fannie Mae*,
861 F.3d 160 (D.C. Cir. 2017) ........................................................................... 4

*Hillsborough Cnty. v. Automated Med. Labs., Inc*.,
471 U.S. 707 (1985)........................................................................................ 24

*Holk v. Snapple Bev. Corp.*,
575 F.3d 329 (3d Cir. 2009)............................................................................... 22

*Ibarrola v. Kind, LLC*,
83 F. Supp. 3d 751 (N.D. Ill. 2015) .................................................................... 10

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
No. 12-MD-2413, 2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)................ 21, 22

*In re Gen. Mills Glyphosate Litig.*,
No. 16-2869, 2017 U.S. Dist. LEXIS 108469 (D. Minn. July 12, 2017) ................................ 8

*In re Kind LLC "Healthy & All Nat." Litig.*,
209 F. Supp. 3d 689 (S.D.N.Y. 2016).................................................................... 29

*Kane v. Chobani, LLC*,
645 F. App'x. 593 (9th Cir. 2016) ...................................................................... 30

*Le v. Kohls Dep't Stores, Inc.*,
160 F. Supp. 3d 1096 (E.D. Wis. 2016)................................................................. 17

*Lockwood v. ConAgra Foods, Inc.*,
597 F. Supp. 2d 1028 (N.D. Cal. 2009) ................................................................. 27

*Mann v. Bahi*,
251 F. Supp. 3d 112 (D.D.C. 2017) ........................................................................ 8

*Murphy v. Natl. Collegiate Athletic Ass'n*,
  138 S. Ct. 1461 (2018) .................................................................... 18

*N.Y. State Rest. Ass'n v. New York City Bd. of Health*,
  556 F.3d 114 (2d Cir. 2009) ...................................................... 23, 24

*National Consumer's League v. Doctor's Assocs., Inc.*,
  No. 2013 CA 006549 B, 2014 D.C. Super. LEXIS 15
  (D.C. Super. Ct. Sept. 12, 2014) ................................... 23, 26, 27, 28

*National Consumers League v. Bimbo Bakeries USA*,
  No. 2013 CA 006548 B, 2015 D.C. Super. LEXIS 5 (D.C. Super. Ct. Apr. 2, 2015) ...... passim

*National Consumers League v. Flowers Bakeries USA*,
  36 F. Supp. 3d 26 (D.C. Super. Ct. 2014) ..................................... 15, 17

*National Consumers League v. Gerber Prods. Co.*,
  No. 2014 CA 008202 B, 2015 D.C. Super. LEXIS 10
  (D.C. Super. Ct. Aug. 5, 2015) .............................................. 14, 15, 17

*Organic Consumers Ass'n v. Bigelow Tea Co.*,
  2018 D.C. Super. LEXIS 11 (D.C. Super. Ct., Oct. 31, 2018) .................. 15, 16, 29

*Organic Consumers Ass'n v. Gen. Mills, Inc.*, No. 2016 CA 6309 B,
  2017 D.C. Super. LEXIS 4 (D.C. Super. Ct. July 6, 2017) ...................... passim

*Organic Consumers Ass'n. v. R.C. Bigelow, Inc.*,
  314 F. Supp. 3d 344 (D.D.C. 2018) .............................................. 21, 28

*Pelayo v. Nestle USA, Inc.*,
  989 F. Supp. 2d 973 (C.D. Cal 2013) ............................................. 9, 10

*Petrosino v. Stearn's Products, Inc.*,
  No. 16-CV-7735, 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ...................... 8

*Pom Wonderful v. Coca-Cola Co.*,
  134 S. Ct. 2228, 2237 (2014) ........................................................ 23

*Reid v. Johnson & Johnson*,
  780 F.3d 952 (9th Cir. 2015) ......................................................... 26

*Reynolds v. Army & Air Force Exchange Service*,
  846 F.2d 746 (Fed. Cir. 1988) ......................................................... 5

*Richardson v. L'Oreal U.S., Inc.*,
  991 F. Supp. 2d 181 (D.D.C. 2013) .................................................. 17

*Rikos v. Procter & Gamble, Co.*,
  782 F. Supp. 2d 522 (S.D. Ohio 2011) ............................................. 26

*Rooney v. Cumberland Packing Corp.*,
No. 12-CV-0033, 2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012) .......................... 10

*Schuler v. United States*,
617 F.2d 605 (D.C. Cir. 1979) ................................................................................................ 4

*Search v. Uber Techs., Inc.*,
128 F. Supp. 3d 222 (D.D.C. 2015) ........................................................................................ 8

*Shahinian v. Kimberly-Clark Corp.*,
No. CV 14-8390, 2015 U.S. Dist. LEXIS 92782 (C.D. Cal. July 10, 2015) ........................... 17

*Silva v. Smucker Natural Foods, Inc.*,
No. 14-CV-6154, 2015 U.S. Dist. LEXIS 122186 (E.D.N.Y. Sept. 14, 2015) ............... passim

*Taradejna v. General Mills, Inc.*,
909 F. Supp. 2d 1128 (D. Minn. 2012) ........................................................................... 27, 31

*Thomas v. Principi*, 394 F.3d 970, 364 U.S. App. D.C. 326 (D.C. Cir. 2005) .............................. 4

*Tran v. Sioux Honey Ass'n, Coop.*,
No. 17-cv-110, 2018 U.S. Dist. LEXIS 146380 (C.D. Cal. Aug. 20, 2018) ................... passim

*United States v. Locke*,
529 U.S. 89 (2000) ................................................................................................................. 23

*United States v. Philip Morris USA, Inc.*,
686 F.3d 832 (D.C. Cir. 2012) .............................................................................................. 26

*United States v. Western Pac. R.R. Co.*,
352 U.S. 59 (1956) ................................................................................................................. 25

*Viggiano v. Johnson & Johnson*,
No. CV 14-7250, 2016 U.S. Dist. LEXIS 128425 (C.D. Cal. June 21, 2016) ........................ 29

*Walker v. B&G Foods, Inc.*,
No. 15-cv-03772, 2016 U.S. Dist. LEXIS 15194 (N.D. Cal. Feb. 8, 2016) ........................... 26

*Wyeth v. Levine*,
555 U.S. 555 (2009) ............................................................................................................... 23

*Zeisel v. Diamond Foods, Inc.*,
No. C 10-01192, 2010 U.S. Dist. LEXIS 141941 (N.D. Cal. Sep. 3, 2010) .......................... 23

*Zupnik v. Tropicana Prods.*,
No. CV 09-6130, 2010 U.S. Dist. LEXIS 142060, at **5-6 (C.D. Cal. Feb. 1, 2010) ........... 20

**Statutes**
21 C.F.R. § 10 ................................................................................................................................ 22

21 U.S.C. § 341 *et seq.* ............................................................................................. 22, 23, 24

28 U.S.C. § 1332 ....................................................................................................................... 5

D.C. Code §§ 28-3901, *et seq.* ..................................................................................... passim

Fed. R. Civ. P. 12(b)(1) ........................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 4

Other Authorities

Attachment to Letter from Mara Verheyden Hilliard (Partnership for Civil Justice, Inc.) to Bennett Rushkoff (Office of the Corporation Counsel), April 30, 1999 ........................... 13, 16

Comments Included with the Nutrition Labeling and Education Act of 1990 ..................... 23, 24

Committee on Public Services and Consumer Affairs, Committee Report on Bill 19-0581, the "Consumer Protection Amendment Act of 2012" (Nov. 28, 2012) .................................... 13, 16

D.C. Bar Section on Antitrust, Trade Regulation & Consumer Affairs, "Consumer Protection in the District of Columbia Following the Suspension of DCRA Enforcement of the Consumer Protection Procedures Act" (Apr. 1999) ................................................................................. 16

FDA, *Ingredients Declared as Evaporated Cane Juice: Guidance for Industry* (May 2016) ..... 29

IFC Consulting and the U.S. General Services Administration, "Reg Map," (2003) .................. 29

*Labeling of Human Food Products; Request for Information and Comments*, 80 Fed. Reg. 69905-01 .......................................................................................................................... 22, 29

Presidential Executive Order on Reducing Regulation and Controlling Regulatory Costs, Exec. Order No. 13,771, 82 Fed. Reg. 9339 (Feb. 3, 2017) ............................................................. 29

Regulations

Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food ..................................................................................................................................... 22

Nutrition Labeling and Education Act of 1990, Section 6. National Uniform Nutrition Labeling. ........................................................................................................................................... 10

## **INTRODUCTION**

The applesauce and apple juice products at issue in this case (the "Products[1]") contain the residue of a synthetic (*i.e.*, unnatural) pesticide known as acetamiprid. Defendants Dr Pepper Snapple Group Inc. and Mott's LLP (collectively, "Mott's"), despite being aware of the acetamiprid residue, market and sell the Products as "Natural" and/or made with "All Natural Ingredients." Reasonable consumers expect "Natural" foods to be free from synthetic pesticides. The D.C. Consumer Protection Procedures Act ("CPPA," D.C. Code §§ 28-3901, *et seq*.) prohibits conduct that misrepresents consumer goods or tends to mislead consumers. *See* D.C. Code § 28-3904(a), (d), (e), (f), (f-1), (h) . Plaintiff Beyond Pesticides, a not-for-profit organization acting in a representative capacity on behalf of District of Columbia consumers, seeks to put an end to Mott's practice, which the CPPA specifically empowers it to do.

That's it. That is the entire theory of this case, and the relevant facts.

Mott's Motion to Dismiss seeks to complicate this straightforward matter with arguments that (1) are irrelevant, (2) have already been rejected by this Court and others, and/or (3) misconstrue what Beyond Pesticides' First Amended Complaint ("FAC") actually pleads:

**First**, Mott's argues that the Court lacks subject-matter jurisdiction, apparently because acetamiprid residue is not illegal in foods. The legality of pesticide residue is wholly irrelevant. By representing the Products as "Natural," Mott's effectively tells consumers the Products contain no synthetic pesticides, legal or otherwise. By analogy, it is legal to sell foods containing peanuts; it is not permissible to market those foods as "allergen-free."

**Second**, Mott's contends that no reasonable consumer understands "Natural" to mean "free

---

[1] The Products at issue are several "Mott's" brand applesauce and apple juice products, including but not limited to Mott's Natural Unsweetened Applesauce, Mott's Healthy Harvest Applesauce varieties, and Mott's Natural 100% Juice Apple Juice.

1

from synthetic pesticides." Court after court has rejected that argument when it comes to unnatural residues in foods called "Natural," as Mott's is well aware.

*Third*, Mott's asserts that Beyond Pesticides somehow lacks standing to bring this claim. This assertion contradicts both the CPPA's explicit provisions, which grant standing to non-profit organizations, and its legislative history, which explains that amendments were made in order to ensure the broadest possible standing for non-profit organizations.

*Fourth*, Mott's (like so many defendants asked to account for their food marketing practices) asks the Court to decline to hear the matter altogether, on preemption grounds. Mott's presents no evidence that Congress intended to preempt State consumer-protection actions relating to food products, which is why the preemption argument is as inapplicable here as in the numerous other cases where it has been asserted.

*Finally*, Mott's requests the Court to stay or dismiss the case on primary-jurisdiction grounds, contending that the FDA will someday address the issue of what foods may be labeled "Natural." But even if the FDA were to issue future guidance on the meaning of "Natural" (no such guidance appears forthcoming at this time), its rulemaking would not correct Mott's ongoing misconduct right now. The facts of this case are clear: The Products contain the pesticide residues, which are indisputably unnatural. No special or scientific expertise is necessary to determine whether calling the Products "Natural" violates the CPPA, and the Court is well versed in the area of consumer protection.

Thus, despite Mott's best efforts to complicate matters in its Statement of Points and Authorities in Support of Defendants' Motion to Dismiss ("Def.'s P. & A."), the case remains straightforward. Foods that contain synthetic pesticides are not "Natural," and Mott's should not

be allowed to tell D.C. consumers otherwise. Beyond Pesticides asks for the day in court to which it is entitled, on behalf of these consumers, under the CPPA.

## FACTS

Defendants Dr Pepper Snapple Group Inc. and Mott's LLP sell applesauce and apple juice products under the brand name "Mott's." FAC ¶ 1. The labels on these products state that the products are made with "All Natural" ingredients or are "Natural." *Id*. ¶¶ 3-4. The Products, however, contain acetamiprid, a synthetic neonicotinoid insecticidal neurotoxin. *Id*. ¶¶ 46-47, 59. Acetamiprid is not "natural." *Id*. ¶¶ 25, 27-30. Consumers do not expect synthetic pesticides like acetamiprid to be used in products labeled as "Natural." *Id*. ¶ 55. Therefore, Mott's product labels are false and misleading.

Plaintiff Beyond Pesticides is a is a 501(c)(3) nonprofit organization headquartered in the District of Columbia that promotes safe air, water, land, and food, and works to protect public health and the environment by encouraging a transition away from the use of toxic pesticides, *Id*. ¶¶ 24-30, including systemic neonicotinoid pesticides like acetamiprid, the main chemical at issue in this lawsuit. *Id*. ¶¶ 7-9, 59-66. Beyond Pesticides purchased the Products in order to evaluate their purported qualities as products made of "All Natural Ingredients" or as a "Natural" product. *Id*. ¶¶ 31-32. Tests conducted by an independent laboratory using liquid chromatography mass spectrometry found detectible amounts of acetamiprid in both the Mott's brand applesauce and apple juice tested. *Id*. ¶ 47. On October 1, 2018, Beyond Pesticides filed its First Amended Complaint asserting one cause of action under the CPPA against Mott's based its misrepresentations regarding the Products. Beyond Pesticides' claim is not about the safety of

acetamiprid, but whether Products that contain acetamiprid, an undisputedly synthetic pesticide, are "Natural."[2]

## **ARGUMENT**

When considering motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), court must take all facts alleged in complaint as true and must review "the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *American Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139, 395 U.S. App. D.C. 316 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972, 364 U.S. App. D.C. 326 (D.C. Cir. 2005) (citation omitted)). Dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is inappropriate unless "it appears beyond doubt that plaintiff can prove no set of facts" which would entitle him or her to relief. *Bobreski v. U.S. E.P.A.*, 284 F. Supp. 2d 67, 72 (D.D.C. 2003) (quoting *Empagran S.A. v. F. Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343, 354 U.S. App. D.C. 257, 315 (D.C. Cir. 2003) (citation omitted)).

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002)). Accordingly, when evaluating 12(b)(6) sufficiency, the Court must construe the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)).

---

[2] Mott's dedicates four pages of its brief into detailing "The Regulatory Background" of acetamiprid. Def.'s P. & A. at 4-7. These details are irrelevant to Beyond Pesticides' claim. No regulation (include those cited by Mott's) indicates whether "Natural" can be used to describe products that contain acetamiprid. Mott's went beyond the provisions of the federal regulations when it chose to market the Products as "Natural." When a manufacturer chooses to add marketing representations beyond the federal regulations, that manufacturer must still ensure that the representations are accurate and not misleading. *See* discussion *infra* Sections II.B.2, III.C.1.

I.      **This Court Has Subject Matter Jurisdiction to Hear Beyond Pesticides' CPPA Claim.**

The CPPA sets the venue for a private right of action to be brought in the Superior Court of the District of Columbia. *See* D.C. Code § 28-3905(k)(2). This Court may take subject matter jurisdiction from the Superior Court over "all civil actions where the amount in controversy exceeds the sum or value of $75,000," and the parties are from different states. 28 U.S.C. § 1332. Plaintiff Beyond Pesticides is a citizen of, and headquartered in, the District of Columbia. FAC ¶ 24. Defendant Dr Pepper Snapple Group, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in the State of Texas. *Id.* at ¶ 33. Defendant Mott's, LLP is organized under the laws of Delaware, with its principal place of business in the state of New York. *Id* at ¶ 34. The Court has acknowledged that the amount in controversy exceeds $75,000. *See Beyond Pesticides v. Dr Pepper Snapple Grp., Inc., et al.*, 322 F. Supp. 3d 119, 122 (D.D.C. 2018) (Lamberth, J.). Thus, Beyond Pesticides' burden to allege subject matter jurisdiction at this stage is satisfied.

The gravamen of this case is Beyond Pesticides' contention that acetamiprid, a synthetic substance, should not be present, in any amount, in Products sold as "Natural" which contain only "All Natural Ingredients." Mott's ignores the actual allegations (which are false advertising[3]) and

---

[3] Furthermore, without elaboration on what defects Mott's believes are present in Beyond Pesticides allegations related to subject matter jurisdiction, Beyond Pesticides cannot present additional facts that prove this Court's jurisdiction. If the Court believes it lacks subject matter jurisdiction of this matter, Beyond Pesticides respectfully requests additional briefing that would allow Beyond Pesticides to determine why Mott's claims this Court lacks subject matter jurisdiction and an opportunity to cure its pleadings and/or present facts proving this Court's subject matter jurisdiction. *Reynolds v. Army & Air Force Exchange Service*, 846 F.2d 746 (Fed. Cir. 1988) (finding that a plaintiff must be afforded opportunity to establish jurisdictional facts before dismissal on a Fed. R. Civ. P. 12(b)(1) motion).

attempts to recast the Complaint as a "thinly-veiled attack on the Environmental Protection Agency's established tolerances for acetamiprid." Def.'s P. & A. at 1. Contrary to Mott's arguments, Beyond Pesticides' claim is not "expressly based" on "safety assertions." Def.'s P. & A. at 11 (emphasis omitted). The false advertising allegations are unrelated to whether pesticide residues are safe, or within EPA maximum tolerances; the question is whether these synthetic pesticides are "Natural." As a diversion. Mott's cites ¶¶ 59-62 and 76-77 of the First Amended Complaint. Those paragraphs add context to consumers' understanding of neonicotinoid pesticides, and help establish Beyond Pesticides' nexus with the consumers and issues, but the CPPA claim would stand even if the paragraphs were removed entirely.

Elsewhere in its Statement of Points & Authorities, Mott's demonstrates that it correctly understands Beyond Pesticides' claims, which are about the "Natural" representations and not about safety or compliance with maximum tolerances:

- "Specifically, Beyond Pesticides alleges that by using statements such as 'All Natural Ingredients' and 'Natural,' Mott's misled consumers because the Products contain trace amounts of acetamiprid." Def.'s P. & A. at 2.

- "Accordingly, Beyond Pesticides cannot and does not contest that the use of acetamiprid has been deemed both safe and lawful by the EPA." *Id.* at 3.

The First Amended Complaint, moreover, specifically pleads that the case is about whether acetamiprid is "Natural," not whether it is legal:

Acetamiprid is "legal" in connection with food products, insofar as the law does not preclude the use of acetamiprid in treating and harvesting crops, and has made allowances for certain amounts of residues to remain on fruits and vegetables before they are delivered to the end user to be cleaned and consumed. Defendants, however, did not and do not simply claim that the Products are "legal"; instead, Defendants claim the Products contain nothing but "All Natural Ingredients" or are "Natural."

FAC ¶ 9. In sum, Beyond Pesticides agrees with the Mott's assertion that this Court need not engage in determinations of "completeness, and reliability of the available data" regarding the safety of pesticides, and "available information concerning the dietary consumption patterns of consumers," Def's P. & A. at 9 (citations omitted), because this line of inquiry is immaterial to Beyond Pesticides' claim. Even if the pesticide tolerance allowances were violated, or if facts were presented that showed that the EPA's determination was incorrect, Mott's does not show why this Court would lack jurisdiction to hear an unrelated false advertising claim.

## II.     Beyond Pesticides' Claim That a Reasonable Consumer Would Not Expect Synthetic Pesticides in a Food Labelled as "Natural" Is Plausible.

According to Mott's, it is not plausible that a reasonable consumer would expect a "Natural" product containing "All Natural Ingredients" to be free from synthetic pesticides. Case after case has held that this determination cannot be made as a matter of law, on a motion to dismiss. Indeed, Mott's must know that no such determination can be made, as it resorts to arguing that reasonable consumers must somehow be well-versed in federal tolerance levels and understand them to define what "Natural" means—an argument unsupported by precedent or common sense.

### A.     The Reasonable-Consumer Standard Is a Question of Fact and Cannot Be Decided on a Motion to Dismiss.

Beyond Pesticides contends that a reasonable consumer would not expect a "Natural" product to contain residue of synthetic pesticides. Courts have specifically held (1) that this claim is plausible, and (2) that a reasonable consumer's belief cannot be determined as a matter of law. For example:

- *Organic Consumers Ass'n v. General Mills, Inc.*, No. 2016 CA 6309 B, 2017 D.C. Super. LEXIS 4, *24-25 (D.C. Super. Ct. July 6, 2017). "Plaintiffs, by contrast, allege specifically and plausibly that the precise wording Defendants use on its product labels misleads consumers—i.e., that Defendant's products contain traces of a chemical agent while

representing to be made from 100% natural whole grain oats, and that Defendant thus misleads consumers seeking to purchase and consume 'natural' foods. Whether Plaintiffs' claims are meritorious is not at issue at this juncture; plainly, a reasonable fact-finder considering the facts as alleged could conclude that consumers have been misled. . . ''

- *Tran v. Sioux Honey Ass'n, Coop.*, No. 17-cv-110, 2018 U.S. Dist. LEXIS 146380, *14-15 (C.D. Cal. Aug. 20, 2018). A reasonable consumer "may interpret the word 'Pure' (and particularly, '100% Pure') to mean that the final product does not contain any substance (even in trace amounts) that is not essential to the honey, particularly synthetic substances such as [a pesticide]."

- *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735, 2018 U.S. Dist. LEXIS 55818, *20-21 (S.D.N.Y. Mar. 30, 2018) (citation omitted). "[A] reasonable consumer acting reasonably very well could be misled because they could conclude that the "natural" label on the cosmetics means that they are made with all natural products."

- *Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154, 2015 U.S. Dist. LEXIS 122186, *5 (E.D.N.Y. Sept. 14, 2015) (citation omitted). "What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss.").[4]

Against this precedent, Mott's relies upon *In re General Mills Glyphosate Litigation*, No. 16-2869, 2017 U.S. Dist. LEXIS 108469 (D. Minn. July 12, 2017), which alleged that a representation that **one ingredient** was "100% Natural" was misleading when the product was found to contain glyphosate residue from some source. The court found that, although the product in question was not labeled as "organic," "[t]he representation 'Made with 100% Natural Whole Grain Oats' cannot plausibly be interpreted to be more restrictive with regard to synthetic residue than the standard for labelling a product as 'organic' under federal law." *Id.* at *17 (citation

---

[4] In an effort to overcome the substantial weight of this precedent, Mott's cites two cases in which motions to dismiss CPPA claims were **denied**—*Search v. Uber Techs., Inc.*, 128 F. Supp. 3d 222, 236-37 (D.D.C. 2015) (denying motion to dismiss as to CPPA claim), and *Mann v. Bahi*, 251 F. Supp. 3d 112, 126 (D.D.C. 2017) (denying motion to dismiss as to CPPA claim, noting that the claim was a question of fact which could not be decided in motion to dismiss)—and a third case, *Alicke v. MCI Communications Corp.*, 111 F.3d 909, 911 (D.C. Cir. 1997), which is more than 20 years old, about whether it was deceptive for a long-distance phone service to charge in full-minute increments for consumers' calls. The purported relevance of *Alicke* to this food-marketing case is unclear.

omitted). Subsequent, as well as prior, cases have rejected this logic, finding questions of fact as to, *inter alia*, whether reasonable consumers are even knowledgeable of the federal definition of "organic."[5] *See, e.g.*, *Tran*, 2018 U.S. Dist. LEXIS 146380 at *17 ("this Court disagrees [with *In re General Mills*] that it can be said as a matter of law that any product that meets specified organic standards can be advertised as '100% Natural' or, in this case, '100% Pure' without misleading consumers. Whether the standards for 'organic' and 'pure' are necessarily aligned in the minds of reasonable consumers is an issue of fact."); *Segedie v. Hain Celestial Grp., Inc.*, No. 14-cv-5029, 2015 U.S. Dist. LEXIS 60739, *29-30 (S.D.N.Y. May 7, 2015) (noting that products labeled as "natural" can be misleading "even though foods labeled 'organic' may lawfully contain some synthetic ingredients. There is no rigid hierarchy that makes 'natural' a more permissive label than 'organic' in all respects as a matter of law."); *Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409, 2014 U.S. Dist. LEXIS 67118, *3, *18-19 (S.D.N.Y. May 15, 2014) (denying motion to dismiss "natural" label claims because consumer can be misled by term "natural," even if product meets definition of "organic"); *Ham v. Hain Celestial Group, Inc.*, 70 F. Supp. 3d 1188, 1194 (N.D. Cal. 2014) ("[Defendant] might be correct that some consumers believe that organic is a higher standard than 'All Natural,' but that does not make it implausible that a reasonable consumer would believe that [the substance at issue] is not an 'all natural' ingredient.").

Mott's other authority, curiously, is *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal 2013), in which a court held that a reasonable consumer would not be plausibly misled if a product contained ingredients that were ***disclosed in the ingredients list***. *Id.* at 980. The plaintiff

---

[5] Indeed, there is no official definition of "Natural," so it is impossible to objectively view the terms "Natural" and "organic" in a relative way. An opinion that "organic" is a more exacting term than "Natural" and that anything that is "organic" must be "Natural" is just that, an opinion. It cannot be based on any formal standards.

in *Pelayo* did not understand the source of two ingredients in the product, xanthan gum and soy lecithin, and felt misled when she found out that these were processed ingredients. The court understood the plaintiff's confusion but said that in the context of the packaging itself, which included xanthan gum and soy lecithin in the list of ingredients, a reasonable consumer would not be misled. *See Id.* (citing *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033, 2012 U.S. Dist. LEXIS 58710 (S.D. Cal. Apr. 16, 2012) (holding that no reasonable consumer could be deceived by "Sugar in the Raw" when package stated in several places that sugar in questions was turbinado-sugar (a processed sugar)))." Mott's ***does not list acetamiprid in the ingredients*** on the package label, or otherwise disclose its presence.

Acetamiprid is indisputably a synthetic chemical. Acetamiprid residue is found in Mott's Products. Beyond Pesticides alleges that the presence of acetamiprid is material to a reasonable consumer's decision to purchase Mott's' Products. Beyond Pesticides alleges facts to underlie this contention, including the 2015 Consumer Reports National Research Center phone survey assessing consumer opinion regarding food labelling finding that 66% of all respondents believed "natural" on packaged and processed foods means that "no toxic pesticides were used." FAC ¶ 55.[6] Indeed, the FDA itself has determined that the term "Natural" can be misleading. *See Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms*, 56 Fed. Reg. 60421-01, 60466 (Nov. 27, 1991) ("The meaning and use of the term 'natural' on the label are of considerable interest to consumers and industry. Data suggest that uses of 'natural' claims are confusing and misleading to consumers and frequently breach the public's legitimate

---

[6] Defendants' cites are inapposite. For example, in *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 757 (N.D. Ill. 2015), the court found that no reasonable consumer would understand "no refined sugars" to mean that the sugar was still in its natural state since sugar in its natural state is a grass. Plaintiff here alleges that reasonable consumers are likely to deceived by a product labelled "Natural" if the product contains a pesticide.

expectations about their meaning."). Furthermore, Beyond Pesticides has alleged that the Mott's representations are material to D.C. consumers' decision to purchase the Products. *See* FAC. Thus, accepting as true all allegations in the Complaint and viewing them in a light most favorable to Beyond Pesticides, *see, e.g.*, *District of Columbia v. ExxonMobil Oil Corp.*, 172 A.3d 412, 425 (D.C. Cir. 2017), Beyond Pesticides has plausibly alleged that Mott's representations are objectively misleading to consumers.

### B.     Federal Regulations Do Not Define What "Natural" Means to a Reasonable Consumer

Mott's states that if the EPA tolerates certain levels of pesticides on foods, then consumers must then consider that food to be "Natural." *See, e.g.* Def.'s P. & A. at 13. Mott's cites no authority for the proposition that a reasonable consumer deciding among juices at the grocery store is not only aware of federal pesticide residue allowances, but also so well-versed in them as to be actively considering them when making a purchase decision. Mott's further confuses the issue by comparing "Natural" claims to "organic" labeling requirements. *Id.* at 13-14. Whether "organic" products may contain acetamiprid is irrelevant to consumers' expectations for food products labeled "Natural." Beyond Pesticides' claim is that reasonable consumers may be misled by the representation that the Products are "Natural"—not whether the Products meet any certification standards.

Mott's then falls into a contradictory listing of non-issues, stating that:

- Consumers expecting their food to be free of pesticides would be akin to asking for a product so pure that as to be "difficult (or perhaps impossible) to achieve in a laboratory setting." *Id.* at 12. This statement has no citation to any authority, nor is it the issue. Beyond Pesticides argues that a reasonable consumer may be misled by a product that contains measurable amounts of pesticides to be labeled "Natural" with "All Natural Ingredients." Moreover, whether a product is "impossible" to produce would be a question of fact, and

such a conclusion cannot be made on a motion to dismiss.[7]

- "We live in a world awash with innumerable compounds, microbes, and substances, which are 'naturally' present in trace amounts on most surfaces we touch, foods we eat, and environments we enter." *Id.* at 13.[8] Mott's is claiming that consumers understand "Natural" as "something that is present in the world" and not an as indication of the source. This is absurd. An undisputedly unnatural compound does not become "Natural" because it has made its way onto the surfaces of things we touch.

The whole argument is untenable: Mott's first asserts that it is implausible that reasonable consumers would interpret the word "Natural" exactly the way consumer polling shows they actually do. *See* FAC ¶ 55 (citing consumer polling). Then Mott's asserts, without any support, that the average reasonable consumer is actually presumed to understand the technical requirements of federal pesticide regulations,[9] and further that creating a food without pesticides is impossible.

---

[7] The fact that it may be difficult to meet a reasonable consumer's understanding of what constitutes a "Natural" product does not entitle a food manufacturer to use the term on its labels with impunity. It is the absence of synthetic substances that makes a product "Natural," not the difficulty of eliminating those synthetic substances. *Accord Tran*, 2018 U.S. Dist. LEXIS 146380 at *17-18 (the fact "that it is impractical to attempt to ensure that no [pesticide] makes its way into its honey given the sheer number of honey bees in a typical colony and their foraging range. . . . do[es] not go towards establishing what reasonable consumers would understand the terms '100% Pure' or 'Pure' to mean.").

[8] Mott's does not provide any citation for this contention. Instead, Mott's cites two cases that are not particularly relevant, *Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D.D.C. 2010), *aff'd*, 637 F.3d 355 (D.C. Cir. 2011), which is a breach of contract case in which the plaintiff was requesting services that were not offered in the contract, and *Halpern v. AARP*, 826 F. Supp. 2d 1, 3 (D.D.C. 2010), in which the action was dismissed because the same issue had already been decided in *Whiting*.

[9] *Cf. In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, MDL No. 2705, 2018 U.S. Dist. LEXIS 187031, *22-23 (N.D. Ill. Nov. 1, 2018) ("There is no reason to believe that either the patent or the Department of Agriculture report would be familiar to a reasonable consumer with an ordinary understanding of how dairy products generally fare when unrefrigerated."); *Salazar v. Honest Tea, Inc.*, No. 2:13-cv-02318, 2015 U.S. Dist. LEXIS 153397, *15-17 (E.D. Cal. Nov. 12, 2015) (rejecting argument that consumer must be aware of FDA requirements in order to state claim premised on violation of those requirements, as plaintiff is required only to "connect the dots showing how the alleged misbranding misled [the plaintiff] in a way that a reasonable consumer would be deceived" (quotation omitted).).

12

The CPPA was deliberately written liberally and designed to be interpreted broadly to better effectuate its goals of both preventing deceptive business practices and providing relief to the general public for these practices. For example, sections were specifically included to give D.C. consumers stronger legal rights with the stated goal of bringing a wide scope of relief to "fully address" the deceptive business practices.[10] For all of these reasons Beyond Pesticides has plausibly alleged violations of the CPPA.

## III. Beyond Pesticides Has Established Standing to Pursue Its Claim by Alleging Injury in Fact.

Mott's asserts that Beyond Pesticides lacks standing to pursue its claim under the CPPA, ignoring the plain language of the CPPA's standing provisions and Beyond Pesticides clear allegations establishing its standing.

### A. The CPPA Gives a Non-Profit Organization Standing as a Tester and on Behalf of the General Public.

The D.C. Council has twice amended the CPPA to authorize not-for-profit organizations to file litigation in the public interest to halt improper trade practices. *See* Attachment to Letter from Mara Verheyden Hilliard (Partnership for Civil Justice, Inc.) to Bennett Rushkoff (Office of the Corporation Counsel), April 30, 1999, at 1-2 (attached as Exhibit B to the Richman Decl.); Committee on Public Services and Consumer Affairs, Committee Report on Bill 19-0581, the "Consumer Protection Amendment Act of 2012," at 1-2 (Nov. 28, 2012) (attached as Exhibit A to the Richman Decl.). The Council enacted the 2012 amendments authorizing suits by not-for-profit organizations specifically in response to the "chilling effect" of *Grayson v. AT&T Corp.*, 15 A.3d

---

[10] Sections of the CPPA were created specifically to bolster the rights of D.C. Consumers, including a section to give consumers, as well as product or service testers, a private right of action. *See, e.g.*, Columbia Committee on Public Services and Consumer Affairs, Committee *Report on Bill 19-0581, the "Consumer Protection Amendment Act of 2012,"* at 4-5 (Nov. 28, 2012) (attached as Exhibit A to the Declaration of Kim E. Richman ("Richman Decl.")).

219 (D.C. Cir. 2011), "on non-profit public interest organizations litigating cases in the public interest." Ex. A at 2. Beyond Pesticides is a not-for-profit organization that asserts standing under the provisions added in 2012, specifically § 28-3905(k)(1)(C). FAC ¶¶ 20, 24, 31-32, 37, 46-47, 53, 91, 102-109. Section (k)(1)(C) authorizes "[a] nonprofit organization . . . on behalf of the general public" to "bring an action seeking relief from the use of a trade practice in violation of a law of the District, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes." Beyond Pesticides is a not-for-profit organization that bought the Products to evaluate them as purportedly "All Natural," "Natural," products. Beyond Pesticide adequately pleaded this "tester" standing before this Court. FAC ¶¶ 20, 24, 31-32, 37, 46-47, 53, 91, 102-109.

Non-profit organizations also have standing under § (k)(1)(C) regardless of whether they obtain the products for the purpose of testing or evaluation. *See National Consumers League v. Gerber Prods. Co.*, No. 2014 CA 008202 B, 2015 D.C. Super. LEXIS 10, *16–18 (D.C. Super. Ct. Aug. 5, 2015) (finding that plaintiff had standing under § (k)(1)(C) even if products were not obtained for specific purpose of conducting testing); *National Consumers League v. Bimbo Bakeries USA*, No. 2013 CA 006548 B, 2015 D.C. Super. LEXIS 5, *11-15 (D.C. Super. Ct. Apr. 2, 2015) (same); Ex. A, at 5 ("[N]ew section (k)(1)(C) goes further than standing for testers."). Beyond Pesticides, which alleges conduct by Mott's that conflicts with its mission, has standing to seek relief on behalf of itself and its members under § (k)(1)(C). *See* FAC ¶¶ 20, 24-32, 37, 46-47, 53, 91, 102-109.[11]

---

[11] Not-for-profit organizations such as Plaintiff have standing under § (k)(1)(C) irrespective of a showing of harm to individual consumers. *See* D.C. Code §§ 28-3905(k)(1)(C). Although not

Courts in the District of Columbia have been consistent in holding that not-for-profits acting on behalf of the public, including Beyond Pesticides, have standing under the CPPA. *See, e.g.*, *Organic Consumers Ass'n v. Bigelow Tea Co.*, 2018 D.C. Super. LEXIS 11, *4 (D.C. Super. Ct., Oct. 31, 2018) (finding plaintiff had standing to seek relief from violations of CPPA regarding goods purchased by plaintiff for testing and for economic harm to general public); *Beyond Pesticides v. Monsanto Co.*, 311 F. Supp. 3d 82 (D.D.C. 2018) (allowing Beyond Pesticides' CPPA claim to continue under diversity jurisdiction); *Organic Consumers Ass'n v. General Mills*, 2017 D.C. Super. LEXIS 4, at *6-7 ("[T]he deprivation of the CPPA statutory right to be free from improper trade practices may constitute an injury-in-fact sufficient to establish standing, even though the plaintiff would have suffered no judicially cognizable injury in the absence of the statute.") (citation omitted); *Bimbo Bakeries*, 2015 D.C. Super. LEXIS 5, at *11-14 (finding that plaintiff had standing under § (k)(1)(C) even if products were not obtained for specific purpose of conducting testing); *see also National Consumers League v. Gerber Prods. Co.*, 2015 D.C. Super. LEXIS 10, *16–20; *National Consumers League v. Flowers Bakeries USA*, 36 F. Supp. 3d 26 (D.C. Super. Ct. 2014).

Mott's argument that Beyond Pesticides lacks standing has no basis, as it ignores the language of the CPPA, its legislative history, and controlling case law.

---

necessary to establish standing, Plaintiff has also alleged concrete harm to consumers. Plaintiff alleges that consumers suffered substantial economic injuries when they paid for the Products because they believed them to be "Natural." *See* FAC ¶¶ 5, 10-11, 13-15, 39-43, 49, 52, 55-56, 78-88, 103. Multiple cases from Superior Court of the District of Columbia have found such an economic injury to be "concrete," satisfying the injury-in-fact requirement of Article III. *See Organic Consumers Ass'n v. Bigelow Tea Co.*, No. 2017 CA 008375 B, 2018 D.C. Super. LEXIS 11, *4 (D.C. Super. Ct., Oct. 31, 2018) ("As Plaintiff alleges an economic injury that consumers would not have paid for the Defendant's product had the product not been misrepresented — Plaintiff has standing as a non-profit organization."); *Organic Consumers Ass'n v. General Mills*, 2017 D.C. Super. LEXIS 4, at *5-15.

**B.**     **Beyond Pesticides Has an Explicit Statutory Right to Seek an Injunction Under the CPPA.**

Beyond Pesticides has standing to bring claims for injunctive relief. Mott's argument that Beyond Pesticides lacks such standing disregards the plain language of the CPPA. As a federal court sitting in diversity, this Court applies District of Columbia law; the CPPA explicitly authorizes Beyond Pesticide to seek "[a]n injunction against the use of the unlawful trade practice." D.C. Code § 28-3905(k)(2)(D). In 1999, the Council explicitly authorized the use of injunctions and representative actions to combat the use of unlawful trade practices. *See* Exhibit B at 2; § 28-3905(k)(2)(D), (E); *accord* D.C. Bar Section on Antitrust, Trade Regulation & Consumer Affairs, "Consumer Protection in the District of Columbia Following the Suspension of DCRA Enforcement of the Consumer Protection Procedures Act," at i, 3, 7, 10 (Apr. 1999) (attached as Exhibit C to the Richman Decl.). The CPPA was amended again in 2012 to "provide explicit new authorization for non-profit organizations and public interest organizations to bring suit" and to "recognize a right of action for consumers that purchase products for the purpose of testing and evaluating those products." Exhibit A at 1.[12] Since this amendment, District of Columbia courts have repeatedly declined to dismiss cases in which non-profits seek injunctive relief under the CPPA. *See, e.g.*, *Organic Consumers Ass'n v. Bigelow*, 2018 D.C. Super. LEXIS 11; *Organic Consumers Ass'n v. General Mills*, 2017 D.C. Super. LEXIS 4; *Bimbo Bakeries*, 2015 D.C. Super.

---

[12] Specifically, the Council sought to "provide the courts with a variety of ways to consider standing options that satisfy the prudential standing principles for non-profit and public interest organizations." Exhibit A at 2. "[C]onsumers need not actually have been misled by a misrepresentation . . . to have suffered an injury-in-fact giving rise to an actionable claim." *Id*. at 4. In other words, the Council sought to ensure that the standing inquiry regarding nonprofits produced a more inclusive result.

LEXIS 5; *Gerber*, 2015 D.C. Super. LEXIS 10; *National Consumers League v. Flowers Bakeries USA*, 36 F. Supp. 3d 26.

"Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold as is." FAC ¶ 85. Mott's does not cite a single case that establishes a non-profit cannot seek injunctive relief on behalf of consumers under the CPPA or any other state law that explicitly provides for a non-profit organization to seek an injunction. Instead, Mott's argues that because Beyond Pesticides is aware of Mott's deception and has used the resources at its disposal to alert its members of Mott's deception, it is somehow barred from pursuing its statutory right to seek an injunction. Def.'s P. & A. at 20. The fact that Beyond Pesticides, some conceivable proportion of its membership, and what is likely a miniscule proportion of the general public is now aware of the deceptive and misleading nature of that conduct does not alter the ongoing harm to the consuming public. Furthermore, the CPPA does not require non-profits to plead any future injury. The cases that Mott's cites each involve an *individual* consumer seeking an injunction.[13] Beyond Pesticides' allegations that the misleading and deceptive acts are ongoing, and span across all the Products, are sufficient to establish standing. FAC ¶¶ 1-5, 84-86. To hold otherwise would render provisions of the CPPA superfluous. *Grayson*, 15 A.3d at 238 ("A basic principle [of statutory interpretation] is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous.") (citation omitted).

## IV.    Beyond Pesticides' Claims Are Not Preempted.

---

[13] Even if this Court were to find that cases involving individual-consumer standing are applicable to standing under §§ (k)(1)(C), there is a split in authority. In fact, many courts do find standing to seek injunctive relief when the plaintiff is not likely to repurchase the product. *See, e.g.*, *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1110-11 (E.D. Wis. 2016); *Shahinian v. Kimberly-Clark Corp.*, No. CV 14-8390, 2015 U.S. Dist. LEXIS 92782, at *11-12 (C.D. Cal. July 10, 2015); *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015); *Richardson v. L'Oreal U.S., Inc.*, 991 F. Supp. 2d 181, 195 (D.D.C. 2013); *Henderson v. Gruma Corp.*, No. CV 10-04173, 2011 U.S. Dist. LEXIS 41077, *20-21 (C.D. Cal. Apr. 11, 2011).

There are "three different types of preemption—'conflict,' 'express,' and 'field,'—but all of them work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Murphy v. National Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018) (internal citation omitted). Although this is a consumer-protection case, and not a case about whether federal labeling requirements are met, Mott's argues that the claims are somehow preempted by federal labeling law. This is an argument that many other defendants have tried. The argument fails here as elsewhere, because (1) the consumer-protection claims are consistent with federal law, eliminating the possibility of preemption, and (2) Mott's has established neither conflict nor express nor field preemption.

### A.   Beyond Pesticides' Claims Are Consistent With Federal Law, Which Prohibits Food Labels That Are "False or Misleading."

Mott's claims that Beyond Pesticides' "entire case is preempted" by federal law. Def.'s P. & A. at 21. This argument is based on a misunderstanding of Beyond Pesticides' allegations. Beyond Pesticides alleges that the Mott's Product labels are false and misleading to a reasonable consumer because they represent that the Products are "Natural" when they contain acetamiprid, a synthetic chemical. FAC ¶ 3-6. Beyond Pesticides is not seeking an order to disclose acetamiprid on the label, nor is it "attempt[ing] to use state consumer protection law to impose upon Mott's labeling requirements . . . ." Def.'s P. & A. at 22. Instead, Beyond Pesticides has brought this suit against Mott's affirmative misrepresentations of the Products. If Mott's were to stop calling the Products "Natural," no disclosure would be necessary. Beyond Pesticides' claims are consistent with federal law and thus cannot be preempted. *See, e.g.*, *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154, 2015 U.S. Dist. LEXIS 122186, at *11-12 (E.D.N.Y. Sept. 14, 2015) (denying

motion to dismiss claims alleging that food labels representing products to be "Natural" are false and misleading because claims would impose labeling requirements identical to those imposed by FDCA and, thus, are not preempted).[14]

### B.   Beyond Pesticides' Claims Do Not Conflict with Any Federal Requirements.

Conflict preemption occurs when it is "impossible for a private party to comply with both state and federal requirements." *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). Here, Beyond Pesticides' claims are entirely consistent with the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*, which provides that a food product is misbranded and unlawful if "its labeling is false or misleading in any particular," 21 U.S.C. § 343(a)(1). Beyond Pesticides' claims would not impose any requirement upon Mott's that federal law does not already impose. Under federal law, Mott's is already prohibited from using food labels that are false or misleading. *See id.* The prohibition in 21 U.S.C. § 343(a)(1) against labels that are "false or misleading in any particular" is a separate requirement with which food manufacturers must comply, even if their products otherwise comply with other federal requirements. *See, e.g.*, *Silva*, 2015 U.S. Dist. LEXIS 122186 at *11 ("compliance with [the FDCA's] disclosure requirements concerning colors, flavors, and preservatives does not give a seller free rein to deceptively mischaracterize those ingredients [as "Natural"] on other parts of its label in contravention of state law"); *Zupnik v. Tropicana Prods., Inc.*, No. CV 09-6130, 2010 U.S. Dist. LEXIS 142060, *5-6

---

[14] Defendants cite *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527 (S.D.N.Y. 2008), which is a case about whether the bottled water Aquafina, which comes directly from the "tap" of the municipal water supply, was exempt from disclosing its source on its label because it was purified, and not merely "normal" tap water. Plaintiff in *PepsiCo* was attempting to impose additional labeling requirements on the defendant's products, namely, to disclose its source, above and beyond what was required by the FDA. *Id.* at 535-38. Here, Plaintiff is not imposing labeling requirements on Defendants at all. Also in *PepsiCo*, the FDA had taken comments on a definite proposed rule regarding purified bottled tap water, *id.*, which has not happened here.

(C.D. Cal., Feb. 1, 2010) (there is a "lack of any indication that the FDA could not sue under § 343(a) for a 'false or misleading' label where the label does not violate another, more specific food labeling statute or regulation . . . . [and] Congress presumably chose to include § 343(a) in the statutory scheme in order to allow the FDA to target specific false or misleading labels without having promulgated regulations that address the specific false or misleading aspect of the particular label."). "Because Congress has also allowed states, at the very least, to pass statutes identical to § 343(a), a private party equipped with a private right of action under state law is able to sue to enforce a state statute identical to § 343(a), just as the FDA would be able to sue to enforce § 343(a) itself." *Zupnik*, 2010 U.S. Dist. LEXIS 142060 at *6. That is exactly what Beyond Pesticides is doing in the present action.

Nor would Beyond Pesticides' claims bar any labeling practices of Mott's that are permitted or required under federal law. Beyond Pesticides' claims do not conflict with, or undermine, the requirements of 21 U.S.C. § 346a (pertaining to tolerances for chemical pesticides), 40 C.F.R. § 180.578 (setting tolerance limits for acetamiprid in foods), or any other federal requirement. Mott's would still be able to comply with these federal requirements and would not be precluded from taking any actions expressly permitted by these statutes and regulations. Beyond Pesticides is *not* alleging that Mott's must affirmatively disclose the presence of acetamiprid in the Products where no such federal requirement exists.[15] Beyond Pesticides is *not* alleging that the

---

[15] Defendants assert that Plaintiff is stating Defendants' label must include "disclosure of trace pesticides in the Products and to "displace [the FDA and EPA's detailed regulatory scheme] with a litigation-based regime". Def.'s P. & A. at 21. However, Plaintiff does not seek such disclosure in its Prayer for Relief. *See* FAC ¶ 24, Prayer for Relief. To the extent that Plaintiff Beyond Pesticides' Complaint mentions hypothetical disclosure of acetamiprid in the Products, it is only in the context that such disclosure would prevent consumers from forming the reasonable belief that "Natural" apple juice has nothing unnatural in it. *See, e.g.*, *Tran*, 2018 U.S. Dist. LEXIS 146380 at *7 (holding that requiring removal of misleading statements from product labels "does

Products may not contain levels of acetamiprid within maximum federal limits. Instead, Beyond Pesticides alleges that, when a food contains acetamiprid, a label describing the food as "Natural" would violate the separate and distinct federal requirement that the label not be "false or misleading in any particular." The amount of acetamiprid in the Products at issue is not relevant to Beyond Pesticides' claims—only the fact that acetamiprid is synthetic and, therefore, not "Natural."

Compliance with other federal requirements does not excuse Mott's non-compliance with the prohibitions on food labels that are false or misleading in 21 U.S.C. § 343(a)(1). In other cases where plaintiffs made substantially similar allegations regarding the labeling of food products containing synthetic residues, courts recognized that defendants' compliance with other federal laws was just a "red herring" that was irrelevant to claims of false and misleading labels. *See, e.g.*, *Tran*, 2018 U.S. Dist. LEXIS 146380 at *9 ("Sioux Honey fails to identify any federal requirements that would be impossible to comply with should Tran prevail and Sioux Honey be required to remove the terms 'Pure' and '100% Pure' from its product labels."); *see also, e.g.*, *Organic Consumers Ass'n v. R. C. Bigelow, Inc.*, 314 F. Supp. 3d 344, 357 (D.D.C. 2018) ("This determination regarding unlawful trade practices [pertaining to the labeling of products as natural and environmentally friendly] will not depend on whether Bigelow has complied with the tolerance levels for [a pesticide] in food products set by the EPA.") (internal citation omitted).

Mott's will not have to curtail any federally permissible or required activities. Therefore, there is no conflict with federal law.[16]

_____

not run afoul of the FDCA"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413, 2013 U.S. Dist. LEXIS 123824, *33 (E.D.N.Y. Aug. 29, 2013) (stating that "district courts have rejected preemption arguments premised upon the FDA's non-binding guidance on the meaning of the term 'natural'").

[16] Mott's strategically use ellipses when quoting an FDA request for information and comments to

**V.      Beyond Pesticides' Claims Are Not Expressly Preempted.**

Mott's claims that the Nutrition Labeling and Education Act's ("NLEA"), 21 U.S.C. § 341

*et seq.*, "express preemption provision applies here because section 343(i)(2) does not impose any

labeling requirement whatsoever that mandate the disclosure of trace pesticides in the Products"

Def.'s P. & A. at 21. Of course, Beyond Pesticides does not contend that acetamiprid should be

called an "ingredient," or that state law "requires" acetamiprid to be disclosed—it is the affirmative

use of the term "Natural" that is designed to make consumers believe the Products are free from

synthetic chemicals. Those claims are not expressly preempted.

The NLEA amended the FDCA, *inter alia*, by adding the express preemption provisions in

21 U.S.C. § 343–1(a) that preempt certain types of state labeling requirements that would be

inconsistent with federal law. That express preemption provision of the NLEA does not preempt

---

imply that the FDA never intended that the use of the term "Natural" address pesticides. *See* Def.'s
P. & A. at 22 ("The FDA advised that "the use of the term 'natural' . . . was not intended to address
food production methods, such as . . . ***the use of pesticides***") (ellipses in the original) (emphasis in
original) (quoting *Gibson v. Quaker Oats Co.*, No. 16-CV-4853, 2017 U.S. Dist. LEXIS 130696
(N.D. Ill. Aug. 14, 2017) (citing *Use of the Term "Natural" in the Labeling of Human Food
Products; Request for Information and Comments*, 80 Fed. Reg. 69905-01, 69906)). To begin, this
is not an FDA guidance document, it is merely a request for information and comments that does
not establish any FDA policies. Further, the document states that, since 1993, the FDA has had a
"policy not to restrict the use of the term 'natural' except for added color, synthetic substances,
and flavors. We [the FDA] further stated that we would maintain our policy to interpret the term
'natural' as meaning that 'nothing artificial or synthetic (including all color additives regardless of
source) has been included in, or has been added to, a food that would not normally be expected to
be in the food.'" 80 Fed. Reg. at 69906 (quoting 58 Fed. Reg. 2302, 2407). This document then
made clear that this ***policy*** was not intended to address the use of pesticides. *Id*. Through the use
of ellipses, Mott's implies that the use of the ***term*** "Natural" was not intended to address the use
of pesticides. There is no FDA policy that limits the requirement that labels not be "false or
misleading in any particular" with respect to a label declaring a product containing synthetic
pesticides such as acetamiprid to be "Natural." Moreover, even if there were a relevant policy or
guidance document, it would be non-binding, without the force of law, and without any preemptive
effect. *See Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 340 (3d Cir. 2009) ("We conclude that
the FDA's policy statement regarding use of the term 'natural' is not entitled to preemptive
effect."); *see also In re Frito-Lay N.A., Inc. All Nat. Litig.*, 2013 U.S. Dist. LEXIS 123824 at *32-
33 (same); 21 C.F.R. § 10.115(d)(1) ("Guidance documents do not establish legally enforceable
rights or responsibilities. They do not legally bind the public or FDA.").

state law claims that impose requirements "identical to" federal food labeling requirements. 21 U.S.C § 343–1(a); *see, e.g.*, *Zeisel v. Diamond Foods, Inc*., No. C 10-01192, 2010 U.S. Dist. LEXIS 141941, *7 (N.D. Cal. Sept. 3, 2010) ("Based on the plain language of Section 343-1(a), the Court concludes that Zeisel's claims, to the extent they allege Diamond's labels are false and misleading, are not expressly preempted by the NLEA."). The NLEA further specifies that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343–1(a)] of the [FDCA]." Pub. L. No. 101–535, § 6(c), 104 Stat. 2364; *see also New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009); *National Consumer's League v. Doctor's Assocs., Inc.*, No. 2013 CA 006549 B, 2014 D.C. Super. LEXIS 15, *8-9 (D.C. Super. Ct. Sept. 12, 2014). Thus, when a claim does not fall within the scope of the express preemption provisions in 21 U.S.C. § 343-1(a), it is not otherwise preempted. *See Pom Wonderful, LLC v. Coca-Cola Co*., 573 U.S. 102, 113 (2014) ("If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70–year history.") (quoting *Wyeth v. Levine*, 555 U.S. 555, 574 (2009)).

A claim that a food label is false and misleading is consistent with federal law. Therefore, such a claim can never be preempted under 21 U.S.C. § 343–1(a). This applies specifically to claims premised on labels that falsely and misleadingly use the term "Natural." *See, e.g*., *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 758 (9th Cir. 2015); *Silva*, 2015 U.S. Dist. LEXIS 122186 at *10.

## A.    Congress Has Not Preempted the Entire Field of Food Regulation.

Field preemption occurs when state law occupies a "field reserved for federal regulation," leaving no room for state regulation. *United States v. Locke*, 529 U.S. 89, 111 (2000). "[T]here is no indication that Congress intended the FDA to occupy the entire field of food labeling. As a

result, the state law claims are preempted only if they seek to impose requirements that conflict with federal requirements." *Ault*, 2014 U.S. Dist. LEXIS 67118 at *3 (denying motion to dismiss "Natural" label claims) (internal citation omitted); *accord Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 716 (1985) (noting "presumption that state and local regulation of health and safety matters can constitutionally coexist with federal regulation"); *New York State Rest. Ass'n*, 556 F.3d at 123 (stating that field of food regulation is not preempted); *Silva*, 2015 U.S. Dist. LEXIS 122186 at *6-7 ("Both the Supreme Court and the Second Circuit have recognized this presumption in matters of public health and safety, including the regulation of food and drugs.") (denying motion to dismiss "Natural" label claims). Indeed, Congress has explicitly said that it does not intend to occupy the entire field of food regulation to the exclusion of the states; the NLEA states that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343–1(a)] of the [FDCA]." Pub. L. No. 101–535, § 6(c), 104 Stat. 2364.

The case cited by Mott's, *Gibson*, 2017 U.S. Dist. LEXIS 130696, erroneously found that Congress did intend to preempt state regulation of the entire field of food labeling. The *Gibson* court came to this determination by misquoting 21 U.S.C. § 343-1 as stating "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce[.]" *Gibson*, 2017 U.S. Dist. LEXIS 130696 at *11 (brackets in the original). In actuality, 21 U.S.C. § 343-1 goes on to state (without a period) that only state requirements "not identical" to certain enumerated federal requirements are preempted. 21 U.S.C. § 343-1. *Gibson* is contrary to the precedent cited above. *Gibson* also stated that the erroneous finding of field preemption was supported by 21 U.S.C. § 346a, which sets certain tolerances and exemptions for pesticide chemical residues. Beyond Pesticides' claims do not pertain to, and do

24

not conflict with, federal pesticide requirements.

Thus, Beyond Pesticides' claims are not preempted.

## VI.   There Is No FDA Guidance Forthcoming and No Reason to Defer to Any Agency Under the Doctrine of Primary Jurisdiction.

The doctrine of primary jurisdiction allows a court to defer ruling on a matter when the

technical expertise of an administrative authority is necessary.

> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.

*United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). The doctrine often results in added

expense and delay, and it should "be invoked sparingly." *APCC Servs., Inc. v. WorldCom, Inc.*,

305 F. Supp. 2d 1, 12-13 (D.D.C. 2001). Mott's offers four reasons why it contends the court

should stay, or dismiss, this action:

1.  the issue of deceptive business practices falls "squarely within the technical competence and expertise of the FDA";

2.  a "need for 'uniformity'";

3.  possible future FDA guidance on the term "Natural" at some unknown future date; and

4.  because the EPA regulates pesticides "extensively."

Def.'s P. & A. at 23-26. Though none of these issues are relevant here, or necessarily true, each is

be discussed in turn below.

### A.   Resolution of This Case Does Not Require the FDA's Expertise.

Mott's contends that this Court should dismiss or stay this action to "obtain the benefit of

agency expertise and preserve regulatory uniformity . . . in light of the FDA's own statements

about 'Natural' and 'use of pesticides' and pending FDA action on the use of the term 'Natural' in

food labeling," and because of "the EPA's and FDA's extensive regulation of pesticides." Def.'s

P. & A. at 22-23, 25. This Court is competent to determine the issues in this case, namely whether the Mott's labeling is deceptive to a reasonable consumer. This is not a claim that requires any technical knowledge about acetamiprid; it is undisputed that acetamiprid is not natural, and for purposes of this motion, it is taken as true that acetamiprid is in the Products.

The fact that "the FDCA and its corresponding regulations constitute a comprehensive regulatory scheme for food safety labeling", *Id.* at 23 (citation omitted), has no bearing on this action. This is not an area in which the FDA has greater technical expertise than the courts, as courts regularly determine what reasonable consumers believe. Court after court, including in the context of pesticide residue, have found such questions to be well within the conventional wisdom of the courts. *See, e.g.*, *Organic Consumers Ass'n v. General Mills*, 2017 D.C. Super. LEXIS 4 at *20 (holding that question whether granola bar that contained a pesticide, but was advertised '100% Natural Oats,' would tend to mislead consumers "strikes the Court as one that falls within the conventional experience of the court system"). Claims of this nature do not "require the type of scientific or specialized expertise possessed by the FDA" that might be needed for claims limited to label technicalities. *Bimbo Bakeries*, 2015 D.C. Super. LEXIS 5 at *5 (quoting *Doctor's Assocs.*, 2014 D.C. Super. LEXIS 15 at *11); *see also, e.g.*, *Walker v. B&G Foods, Inc.*, No. 15-cv-03772, 2016 U.S. Dist. LEXIS 15194, *15-16 (N.D. Cal. Feb. 8, 2016) (applying primary jurisdiction doctrine only to questions of food safety, not to advertising); *Doctor's Assocs.*, 2014 D.C. Super. LEXIS 15 at *11-12 (quoting *Rikos v. Procter & Gamble, Co.*, 782 F. Supp. 2d 522, 529-30 (S.D. Ohio 2011)). *Cf. Reid v. Johnson & Johnson*, 780 F.3d 952, 967 (9th Cir. 2015) ("The issue that this case ultimately turns on is whether a reasonable consumer would be misled by [defendant's] marketing . . . ."); *United States v. Philip Morris USA, Inc.*, 686 F.3d 832, 838 (D.C. Cir. 2012) ("courts consistently have refused to invoke the primary jurisdiction doctrine for claims

based upon fraud or deceit").

Mott's cites *Taradejna v. General Mills, Inc.*, 909 F. Supp. 2d 1128 (D. Minn. 2012), a case about whether certain ingredients were even allowed to be in yogurt. This case is readily distinguishable because (1) the ingredients at issue were clearly listed on the packaging; (2) the FDA had already written a proposed rule about what ingredients were allowed into yogurt; and (3) this case arose before the 2016 presidential election and the accompanying changes in federal policy and resources devoted to the FDA. *Id.* Mott's cites also to 22-year-old *Heller v. Coca-Cola Co.*, 230 A.D.2d 768 (N.Y. App. Div. 1996). In *Heller*, the plaintiffs were attempting to impose an additional affirmative labeling requirement on the defendants, namely an expiration date on soft drinks, which the FDA already stated was not necessary. *See id.* at 769-70. Here, Beyond Pesticides' claims do not involve determining whether acetamiprid is allowed to be in applesauce or apple juice, and Beyond Pesticides is not requesting that the Mott's add any labels to its Products.

## B.    Uniformity of Results Does Not Compel Dismissal.

When a marketing or labeling claim turns on issues of state consumer-protection law, litigating the claims is unlikely to cause a substantial danger of inconsistent rulings. *See, e.g.*, *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009) ("even if the FDA were to formally define 'natural,' federal law would not dispose of plaintiff's state law claims"); *Doctor's Assocs.*, 2014 D.C. Super. LEXIS 15 at *12 ("the FDA is unlikely to issue guidance which would resolve this dispute, and there is little concern about uniformity in administration across different jurisdictions"). As D.C. courts have recognized, a false advertising claim under the CPPA "involves application of District of Columbia law," such that "the FDA is unlikely to issue guidance which would resolve this dispute, and there is little concern about uniformity in administration across different jurisdictions." *Doctor's Assocs.*, 2014 D.C. Super.

LEXIS 15 at *12.

The relevant question under the CPPA is not whether the Products conform to labeling regulations, but whether a reasonable consumer would understand Mott's marketing of the Products as "Natural" to mean that the Products do not contain a synthetic pesticide like acetamiprid. *See Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x. 531 (9th Cir. 2016) (upholding district court's refusal to stay case on primary jurisdiction grounds); *Bigelow*, 314 F. Supp. 3d at 357 ("This determination regarding unlawful trade practices will not depend on whether Bigelow has complied with the tolerance levels for [pesticide] in food products set by the EPA.") (internal citation omitted). No *future* rule that the FDA may issue will retroactively make Mott's marketing scheme any less deceptive today.

### C.    The FDA Is Unlikely to Issue Guidance on the Term "Natural."

Mott's contends that the doctrine of primary jurisdiction compels the Court to dismiss or stay this action even though the FDA has taken no formal action on defining "Natural" since 2015 and no actual guidance appears to be forthcoming. *See* Def.'s P. & A. at 24-25.

The FDA is unlikely to issue guidance in the near future. As Mott's notes, the FDA requested comments on the use of "Natural" on food product labeling but has taken no further steps since the comment period closed on May 10, 2016.[17] The FDA never stated that it *would* issue a rule governing use of the term "Natural" (nor when it might theoretically do so), and more than two years have passed since the FDA stopped allowing comments aimed at even determining *whether* it should do so. The FDA also asked whether it should even consider pesticides at all when considering the term "Natural." *Use of the Term "Natural" in the Labeling of Human Food*

---

[17] Mott's misleadingly cites to the comments FDA received for the term "healthy" because the date for that comment period, September 28, 2016, is later than that for the term "Natural." Def.'s P. & A. at 24. Notably, it is still more than two years ago.

*Products; Request for Information and Comments*, 80 Fed. Reg. 69905, 69908. Soliciting input

from external groups on the term "Natural," as the FDA did in November of 2015, is only a

possible first step[18] in a long and complicated process that may drag on for years,[19] and the current

presidential administration is likely to be an obstacle to any regulatory process.[20] Additionally,

none of these parties has made a prior application to any administrative agency about this matter,

and it borders on absurd to suggest that there would not be substantial delay to wait for FDA

guidance (which in any event would not retroactively decide the claims).[21] Where regulatory action

is unlikely to be taken in the near future, if at all, this Court has declined to apply the primary

jurisdiction doctrine. *See, e.g.*, *Organic Consumers Ass'n v. Bigelow Tea Co.*, 2018 D.C. Super.

LEXIS 11 at *7-8; *Organic Consumers Ass'n v. General Mills, Inc.*, 2017 D.C. Super. LEXIS 4 at

*23; *Bimbo*, 2015 D.C. Super. LEXIS 5 at *22-23. That must be the case here, too—as what Mott's

---

[18] This process is explained in the federal government's "Reg Map," IFC Consulting and the U.S. General Services Administration, "Reg Map," (2003), https://reginfo.gov/public/reginfo/Regmap/regmap.pdf.

[19] For example, the FDA first published draft guidance regarding evaporated cane juice in October 2009, but did not publish its final guidance until May 2016—more than six-and-a-half years later. *See* FDA, *Ingredients Declared as Evaporated Cane Juice: Guidance for Industry* (May 2016), http://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/UCM502679.pdf.

[20] Indeed, an Executive Order requires the elimination of two regulations for the adoption of every one. Presidential Executive Order on Reducing Regulation and Controlling Regulatory Costs, Exec. Order No. 13,771, 82 Fed. Reg. 9339 (Feb. 3, 2017). All of the cases relied upon by Mott's were decided prior to the 2016 presidential election and were premised upon the understanding that the FDA was actively considering the definition of "Natural" and action was imminent. *See Viggiano v. Johnson & Johnson*, No. CV 14-7250, 2016 U.S. Dist. LEXIS 128425, *6 (C.D. Cal. June 21, 2016) (noting that plaintiff consented to the stay only 40 days after comments period had closed for FDA to regulate term); *In re Kind LLC "Healthy & All Nat." Litig.*, 209 F. Supp. 3d 689 (S.D.N.Y. 2016) (holding that "argument for a stay is much stronger [where] the FDA has already completed its notice and comment period and seems determined to address the 'all natural' labeling issue").

[21] The government's "Reg Map" suggests that even if FDA were to undertake a decision on the term "Natural," the rulemaking process consists of some nine steps. IFC Consulting *supra* note 20. Soliciting input from external groups, as FDA did three years ago, is only part of the first of these steps. There is no official indication that next step has been completed or even begun.

is actually seeking is a "stay" of indefinite duration, during which it will continue to mislead consumers by labeling the Products as "Natural."

Mott's relies on *Kane v. Chobani, LLC*, 645 F. App'x. 593 (9th Cir. 2016), in which the court considered whether the terms "evaporated cane juice" and "Natural" justified application of the doctrine of primary jurisdiction. The court stayed the litigation on the basis that "the FDA represented that it expects to issue final guidance on the term 'evaporated cane juice' by the end of 2016." *Kane*, 645 Fed. App'x at 594. That is, the FDA had provided a timeline to issue final guidance on "evaporated cane juice," which alleviated concerns of added expense and undue delay. The FDA has not made any similar commitments regarding the term "Natural," and there is no evidence that it will issue any guidance or engage in any rulemaking regarding the term "Natural." Years have passed since the FDA solicited comments over whether it ***should*** regulate the term, with no decision announced. The countervailing concerns of added expense and undue delay are valid and present in this case.[22]

### D.   EPA Decisions Are Not Relevant to the Present Action.

Mott's states that the EPA is planning to receive comments on acetamiprid next year, Def.'s P. & A. at 25-26, and possibly issue a final decision in some untold number of years, that will ***not*** affect the claims in this case. Like the above discussion regarding the FDA, *supra* Section V.C., whether the EPA decides to change its acetamiprid risk assessments will not change whether the Mott's labeling its products "Natural" is misleading to reasonable consumers.

---

[22] At least one court has ***lifted*** a stay on pesticide residue-related litigation because the FDA refused to issue guidance regarding whether and under what circumstances food products containing pesticide residue may or may not be labeled "Pure" or "100% Pure." *See Tran*, 2018 U.S. Dist. LEXIS 146380 at *1 ("The Court issued an order staying this action and referring to the FDA the question of whether and under what circumstances food products containing [a pesticide] may or may not be labeled 'Pure' or '100% Pure.' (Order, Doc. 49.) The FDA declined to weigh in on the issue, so the Court lifted the stay. . . .").

Here, once again, Mott's mischaracterizes Beyond Pesticides' allegations. Beyond Pesticides is not claiming that acetamiprid is not natural because it may have "adverse effects on human nervous system development." Def.'s P. & A. at 26 (internal citation omitted).[23] But even if Beyond Pesticides were basing its claim on that, it would still be irrelevant to whether reasonable consumers are likely to be deceived by the Mott's labelling. The emerging science into acetamiprid does not bear upon whether products containing a synthetic pesticide can be labeled "Natural." Acetamiprid is not natural because it is an artificial, synthetic, chemical. The EPA ruling, if it ever comes, will not magically change acetamiprid into a natural substance.

For all of the above reasons, the Court should exercise its discretion and decline to apply the doctrine of primary jurisdiction in this action.[24]

## CONCLUSION

Despite its efforts to deny Plaintiff Beyond Pesticides the opportunity to represent the interests of D.C. consumers in court, Mott's has presented no valid reason to dismiss or to stay this CPPA action. Beyond Pesticides therefore respectfully requests that the Motion to Dismiss be

---

[23] This is another untenable proposition made by the Defendants, who seem to be implying that the definition of "not natural" is any substance which is bad for humans.

[24] If the Court were to find that primary jurisdiction applies, the proper course would be stay, not dismissal. Once a court determines the primary jurisdiction doctrine applies, the court has discretion either to stay the case and retain jurisdiction or, "if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Taradejna*, 909 F. Supp. 2d at 1134 (citing *Access Telecomms. v. Southwestern Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998)). Regardless of whether the FDA issues a formal definition for "Natural," or any of the other reasons cited by Mott's, *see* Def.'s P. & A. at 23-27, further judicial proceedings regarding the marketing of the Products are foreseeable. "[W]hen a court invokes primary jurisdiction 'but further judicial proceedings are contemplated, then jurisdiction should be retained by a stay of proceedings, not relinquished by a dismissal'." *Astiana*, 783 F.3d at 761. Beyond Pesticides' claims will not be disposed of, the Court still needs to adjudicate whether Mott's marketing of the Products as being "Natural" or made with "All Natural Ingredients" misleads reasonable consumers. Thus, if the Court finds that primary jurisdiction applies, the Court should stay, rather than dismiss, Beyond Pesticides' case.

denied.[25]


Dated: December 14, 2018                    Respectfully submitted,

                                            By: */s/ Kim E. Richman*
                                                Kim E. Richman (D.C. Bar No. 1022978)
                                                RICHMAN LAW GROUP
                                                81 Prospect Street
                                                Brooklyn, New York 11201
                                                Telephone: (212) 687-8291
                                                Facsimile: (212) 687-8292
                                                krichman@richmanlawgroup.com

                                                *Attorneys for Plaintiff*

---

[25] Beyond Pesticides respectfully requests leave to amend, should the Court dismiss any part of the complaint.